## HAMNER v: EDDINS.

1. After appearance, and plea to the declaration, no objection can be taken to any defect in the writ.
2. In an action of trespass to try titles, in some of the counts of the declaration, the land was described by a wrong number, and the verdict was general; held, that the misdescription was cured by the indorsement on the writ.
3. It is sufficient in such action to describe the land sued for, by designating the number of the tract according to the surveys of the United States.
4. In trials of title, the parties are entitled to a jury of freeholders; but that right must be claimed in the Court below, and it is not sufficient to reverse the judgment, that the record does not shew that the jurors were such.
5. A general verdict sustaining the cause of action laid in the declaration is sufficient, although it does not specify the land recovered.
6. And the judgment, though informal, if it adjudges to the plaintiff the damages found by the jury, and a writ of possession for the land, is sufficient.
7. Copies of field notes of the surveys of the public lands, transmitted by the Surveyor General to the several land offices in the districts where the public lands are sold, are not admissible as evidence.

THIS was an action of trespass to try titles, brought by Eddins against Hamner, in the Tuscaloosa Circuit Court, to recover possession of a tract of land, described in the writ as the "west half of the north west quarter of section one, township twenty two, range ten west, of Coffee's survey, in the Tuscaloosa land district." The declaration contained four counts. In the first count the land

was described as in the writ. In the second count it was described as "the west half of the north west quarter of section one, township two, in range west, Coffee's survey, in the district of Tuscaloosa." In the third count it was described as in the second; and in the last count it was described as the close of Eddins "herein above named and particularly described." The defendant pleaded the general issue, and at March term, 1828, the cause was tried, and there was a general verdict that the defendant was guilty of the trespasses and ejectments in the declaration mentioned, and judgment was given for the plaintiff in the same general manner.

On the trial, the defendant took exceptions to the decision of the Court, as to the admissibility of a deposition taken for the plaintiff under a commission, and also because the Court admitted as evidence, certain copies of field notes of the surveys of the land, made by the United States' Surveyors, which were kept at the land office of the United States at Tuscaloosa, and obtained from said office.

Hamner prosecuted his writ of error to this Court, and assigned several errors which appear in the opinion delivered by the Court.

STEWART, for the appellant. The judgment rendered in this case is uncertain. The declaration contains no abuttals, no metes nor bounds, nor is the quantity of land claimed set forth. In truth this suit is brought on a question of boundary; we do not dispute the title of Eddins to his half quarter section of land, nor does he to the adjoining tract which we claim, but the true question is, what is the proper boundary line between the tracts. Suppose then a recovery is had here, what evidence does the record contain of what has been litigated or decided? None. But there is a further uncertainty in the judgment. The first count describes a certain tract; the second and third describe another; the fourth specifies neither, but refers to the previous description, and there are two previous descriptions; the judgment is for the land described in the declaration; but there are two different tracts described in the declaration. Which has been recovered? or have both been? The writ demands one tract only; can two be recovered under this writ? Of what shall the Sheriff deliver possession? A judgment must be perfect and certain, and this is void for uncertainty.[a]

The Court erred in admitting the copies of the field

JULY 1830.

Hamner
v.
Eddins.

[a] Runn. on Eject. 122, 123. Bullers N. P. 109. 1 Munf. 174, 25 26.

*a* 1 Stark. Ev.
389, 157, 150,
154, 160, 161,
173, 171, 181.
3 Littell 330.
1 Haywood
360.7 Cranch
410. 2 Hay-
wood    351,
353.     1
Strange 93.
4 Bibb 409. 1
Mass. 524. 6
Com.   Law
Rep.    453.
Nor.  Peake
129,    130.
Land Laws
420.  3 Sto-
ry's Laws U.
S. 1874.
*b* 2 Dallas 230.
*c* Minor's Ala.
Rep. 12.

*d* 1 Saunders'
R. 318 Note
3.

notes of the survey of the land.   Those documents were not the highest evidence of the survey, nor indeed legal evidence, under any rule.   The original field notes are required by law to be deposited and kept in the office of the Surveyor General; a sworn copy of them is the only legal mode of proving them, because no authority is given by law to the officer in whose custody they are, to certify copies as evidence.   These purport to be copies of an original.   But there is here no legal evidence that they are true copies, nor that the originals are genuine. *a*   In cases concerning real estate, Courts are more strict in the rules of evidence than in other cases. *b*

J. H. Jones, for the appellee.   It is true that there is a misdescription of the land in some of the counts, but it is of the character of a clerical misprision, and not available on error.   There was but one piece of land sued for; that is correctly described in the writ, and the record can be considered as amended by the writ. *c*   The question is simply this, where there is a good count and a bad one in a declaration, is not the verdict good?   It certainly is according to our practice, and in this respect there is no difference between real and personal actions. *d*   The omission to set out the metes and bounds is no objection.   The old rules in this respect do not now hold, nor is there the same necessity here as in England.   Our lands are identified by the number.   The mode of survey adopted in this country avoids all difficulty.   The plaintiff takes possession of the land recovered by him at his peril.   This rule does away all the objections urged.

In relation to the surveys, they are required by law to be made out by the Surveyor General, and forwarded to the respective land offices, where the lands are sold, and the lands are sold by these very identical surveys.   The purchasers are therefore bound by them, and consequently they are evidence.   For what purpose was it that the act of Congress required them to be made out, certified, forwarded to, and kept at the land office where the land is sold?   It was certainly for some purpose.   What was this purpose? it was for the information of the public, and that the land should be sold according to such surveys so exhibited; they formed a part of the conditions of sale.   They are found in the proper repository, and purport to be certified by the proper officer, who is required to furnish and to certify them; they are to be considered as genuine, as the law required them to be kept there.

Ellis, in conclusion. The rule as to good and bad counts in a declaration does not apply. The objection is not so much that the counts are bad, as that two several tracts of land are described, and it is uncertain which is recovered, and whether land is not recovered which was not sued for.

JULY 1830.

Hamner
v.
Eddins.

The field notes were not evidence. Written evidence is of one of two descriptions, public or private. These are probably of a public nature. But there is a further distinction between public records, some are judicial and others not judicial. Judicial records are generally proved by exemplifications certified by the proper officers; and in some instances, records not judicial, may be proved by certified copies, where by express statute the authority is given to a particular officer to certify them. But here the law has given no power to any one to certify these field notes so as to make them evidence; therefore they can be proven only by the production of the original or of a sworn copy. This is the general objection. A variety of other objections however arise in this case. There is no evidence that John Coffee was Surveyor General. It is judicially known that the office exists, because the law has established it, but it is not judicially known who is the officer. His signature does not designate him as Surveyor General, he signs merely as "Surveyor." His hand writing is not proved. He does not certify the copies as true copies, he says merely that they were "examined." One of them purports to be signed merely by a Clerk, and not by John Coffee. But there is another rule which is, that the best evidence is always required; a sworn copy of the original can be procured, and this would certainly be better evidence.

By JUDGE TAYLOR. Several errors are assigned by Hamner, some of which are unimportant; all that are at all material will be noticed in their order.

The 1st. is that "the writ is defective and improper." After a defendant has appeared and pleaded to the declaration, he cannot be permitted to go back to the writ for the purpose of arresting or reversing the judgment. The writ will only be looked to, in such cases for purposes of amendment. This has often been decided by this Court; and even were there no writ, the defendant will be considered as having waived all advantage from the irregularity by pleading to the merits.

JULY 1830.

Hamner
v.
Eddins.

Second assignment. "The declaration is defective and wholly insufficient; variant from the writ and the indorsement, and is for lands not demanded in the writ and indorsement."

This assignment is understood to embrace the difference in the description of the land in the first two counts of the declaration, and to allege a defectiveness in the description itself. The first count describes it as "the west half of the north-west quarter of section one, township *twenty-two*, and range ten west, (Coffee's survey) in the Tuscaloosa land district," &c. The second count describes the land as follows, viz: "the west half of the north-west quarter of section one, township *two* and range ten west, (Coffee's survey) in the Tuscaloosa land district." The difference in the description is, that in the first count the land is described as lying in township twenty-two, and in the second as lying in township two. The survey of the public domain is a part of the history of our country. The law informs us that each township is six miles square, and that the lines of each range run parallel with each other; of necessity then there is an hundred and twenty miles between the first section in township two, and the first section in township twenty two. This proves that there is a mistake in one of the counts, and by turning to the indorsement on the writ we find that the tract sued for lies in township twenty-two, which is actually within the limits of the Tuscaloosa land district, and the mistake is thus corrected. Where there are different counts in the declaration in an action of trespass to try titles, it is certainly the better practice for the count on which a recovery is had to be specified in the verdict; but in this case this certainly is not a ground for reversal. As to the sufficiency of the description of the land sued for, it is believed that it could not have been better described. Our lands are so accurately laid off, that it is only necessary to know what subdivision is claimed, and with the aid of the maps of the country preserved in the different offices, and to which parties can always have access, there will be little difficulty in identifying it.

The third assignment is, "the jury were not competent to try the issues; they not being freeholders." The parties were certainly entitled to a jury of freeholders, but for aught that appears in the record, the verdict may have been rendered by such a jury. It is a sufficient answer to this assignment, however, that there was no objection to any of the jurors in the Circuit Court.

Fourth assignment. "The verdict is uncertain, infor-mal and insufficient." The verdict finds that "the defendant is guilty of the trespass and ejectments in the plaintiff's declaration, mentioned in manner and form as the plaintiff against him hath complained." This is all that it is necessary the jury should find by their verdict. If a sufficient cause of action is contained in the declaration, then the verdict sustains that cause of action, by finding that the plaintiff had proved it to the satisfaction of the jury.

Fifth assignment. "The judgment is informal, uncertain and insufficient, and does not shew with sufficient certainty what lands are recovered." That the judgment is informal is certain, the recovery of the land should have been plainly expressed in it, but this is not done; it however adjudges to the plaintiff the damages found by the jury, and the writ of *habere facias possessionem.* There is enough, therefore, plainly to evince the intention of the Court, and this is sufficient.

The sixth assignment is considered as disposed of with the second.

The seventh is the only material one which remains to be considered. It is in these words, viz: "the Court erred in the several opinions as expressed in the bill of exceptions, and should not have permitted the several pieces of paper evidence which were objected to, to go to the jury, but should have rejected the deposition of the witness Peery. The paper evidence referred to in the assignment is copied into the bill of exceptions, and purports to be copies of the field notes made out by the Surveyors, who surveyed townships numbered 21 and 22 in range 10, in the Tuscaloosa land district. The field notes relating to each township were exhibited separately, and were entirely unconnected with each other. At the bottom of the last page of the first paper, which purported to contain a copy of the field notes relating to township 22, was this entry "examined, John Coffee, surveyor."

William Gould, the Register of the Tuscaloosa land district, who by virtue of his office is superintendant of the land sales within that district, was introduced as a witness, and deposed that the said notes of survey of township 22, were obtained by the plaintiff from his office, where they were kept; that he received them by mail, under cover directed to him, accompanied by a letter in the following words, which he produced.

"Surveyor's Office, Florence, Ala. ⎱
              14th January, 1826.        ⎰

"Sir: Herewith you will receive the field notes of twelve townships of land, to wit: townships No. 22 of ranges No. 6 to 17 inclusive, and which have been sold at Tuscaloosa.

(Signed)          JOHN COFFEE."

The bill of exceptions states that no other evidence was offered concerning said notes, and no signatures were proved.

That other paper purported to be a similar copy of the field notes relating to township 21, at the bottom of the last page of which was a memorandum as follows, viz: "examined; John Coffee, Surveyor, by James G. Weakley, Chief Clerk, Surveyor's office." Relative to this paper, Mr. Gould testified that it was in his office at the time of his appointment. In the land laws of the United States, page 421, we find the following provision. "Every Surveyor shall note in his field book, the true situation of all mines, salt licks, salt springs, and mill seats which shall come to his knowledge; all water courses over which the lines he runs shall pass, and also the quality of the lands. These field books shall be returned to the Surveyor General, who shall therefrom cause a description of the whole lands surveyed, to be made out, and transmitted to the officers who may superintend the sales."

If these papers were admissible as evidence they must be made so by some rule of evidence relating to public documents. Public documents are either of record or not of record. It is not material as to the result of this investigation, whether the field notes which are returned to the office of the Surveyor General, shall be considered as belonging to the former, or latter of these divisions; but it is probable as respects the mode of proof, they may correctly be considered as records. Records may be proved either by mere production or by copy. In 1st Starkie 151, we are told that copies of records are either, first, exemplifications, or secondly, copies made by an authorized officer, or thirdly, sworn copies. Exemplifications are always proved by the seal of the office at which they are made out. These papers do not come within this description, for it is not pretended that there is any official seal known to the office to which field notes are required to be returned.

They do not come within the description of copies made

by an authorized officer. The law does not require the Surveyor General to have copies of the field notes, which are returned to his office, transmitted to the officers who may superintend the sales; but that from such field books he shall "cause a description of the whole lands surveyed, to be made out and transmitted to such officers." According to the law therefore, it is left to the Surveyor General to extract from these notes so much as he may think proper, and to vary the language used in them in such way as he considers calculated to give the best knowledge of the lands. Taking it for granted that the papers which were offered in evidence emanated from his office, but it is far from being certain that there was sufficient proof of this fact, still they could not come within the description of copies of records issued by an authorized officer. It follows, therefore, that nothing but a sworn copy of the field notes, taken from the originals in the office of the Surveyor General, would be legal evidence. The Circuit Court, therefore, erred in permitting these papers to go to the jury.

The point relative to the deposition was not argued, and therefore is not considered in the decision. Let the judgment be reversed and the cause remanded; in this opinion the Court is unanimous.

Reversed and remanded.

Judge Crenshaw, not sitting.