THE STATE OF ALABAMA VS BELL.[*]

*Of questions on the abatement of nuisances.*

1. Where, by the terms of a private statute, a privilege was granted to certain persons to erect mills upon a river, which privilege, in a certain event, was subject to revocation,—and the Judge of the County Court was vested with power, on the happening of a contingency, to abate the mills, as a nuisance, it was held,—that such statute did not divest the Circuit Court of its ordinary jurisdiction, in the abatement of the nuisance, by indictment.

2. Though it seems, that one might not be found guilty of a nuisance, in the erection or continuance of the mills, if erected in strict conformity with the provisions of the statute,—until the privilege granted under the act had been revoked in the manner pointed out in the statute.

3. But this being a matter resting on the evidence, this Court, in the absence of a question raised on the point, would presume, a jury had been satisfied, that a defendant, against whom a verdict in such a case, had been rendered, had not complied with the terms on which the privilege was granted, or had continued the nuisance, after it had become unlawful, or that the inquisition, abating the nuisance, had been made.

4. Copies of maps of original surveys, might be legal evidence to establish circumstances, going to show, that a stream was navigable.

5. And where copies of maps, were admitted as evidence in a cause, the record of which, described them, as *copies proved by a witness, to have been compared with the original*

---

[*]The judgment in this case, was given at January term, 1837.

*maps,* this Court refused to hear a suggestion, that the copies, were made from copies.

6. One indicted for a nuisance, cannot defend against the legality of a conviction, by alleging, that he only acted as the agent or overseer of another.

7. Thus, one indicted for a nuisance, in the erection of mills, cannot interpose a bar against the legality of a conviction for the offence, by alleging, that the mills are the property of another, residing in a different State, for whom defendent is acting as agent.

8. But it seems, such matter might well be urged to a jury, as a circumstance, in mitigation of a discretionary penalty or fine.

On points reserved from the Circuit Court of Sumter county.

The record in this case showed, that at the October term, eighteen hundred and thirty-six, of the Circuit Court of Sumter, an indictment was found by the grand jurors of that county, against Robert Bell, in the following terms.

"The grand jurors of the State of Alabama, elected, sworn and charged to enquire for the body of the county of Sumter, in said State, upon their oaths present, that the river Sucarnochee,—that is to say, a certain part of the said river, lying and being in the county of Sumter aforesaid, is, and from the time whereof the memory of man is not to the contrary, hath been an ancient river and public highway, free to the citizens of the State of Alabama, and of the United States, with their ships, barges, lighters, boats and other vessels, to navigate, sail, row, pass and repass and labor, at their will and pleasure, without any impediment or ob-

struction whatsoever. And the jurors aforesaid, upon their oaths aforesaid, do further present, that Robert Bell, on the first day of August, in the year of our Lord, one thousand, eight hundred and thirty-six, and from that day, until the day of the finding of this indictment, with force and arms, in the county of Sumter aforesaid, a certain mill-dam, for the purpose of collecting, withholding, and retaining the water flowing down the said river Sucarnochee, before that time, made, erected, and constructed across said river, Sucarnochee, of logs, timber, stone and earth, near the town of Livingston, in said county of Sumter, by certain persons, to the jurors unknown, unlawfully, wilfully, and unjuriously did continue, and still doth dontinue, so erected and constructed, across the said river Sucarnochee, and public highway, as aforesaid, by means whereof, the navigation and free passage of, in, through, along, and upon, the said river, Sucarnochee, and public highway, on the day and year, and on the said other days and times, hath been, and still is greatly straitened, obstructed and confined, to wit, in the county of Sumter, aforesaid, so that the citizens of the said State of Alabama, and of the United States, navigating, sailing, rowing, passing, repassing, and laboring with their ships, barges, lighters, boats, and other vessels, in, through, along and upon the said river Sucarnochee, and public highway, there, on the same day and year aforesaid, and on the said other days and times, could not, nor yet can go, navigate, sail, row, pass, repass and labor, with their ships, barges, lighters, boats, and other vessels, upon and about their lawful and

necessary affairs and occasions, in, through, along, and upon the said river, and public highway, there, in so free and uninterrupted a manner, as of right, they ought, and before have been used and accustomed to do; to the great damage and common nuisance of all the citizens of the State of Alabama, and of the United States, navigating, sailing, rowing, passing, repassing and laboring with their ships, barges, lighters, boats and other vessels, in, through, along, and upon the said river, Sucarnochee, and public highway, there, to the great obstruction of the trade and navigation of, and upon the said river, contrary to the statute in such case, made and pro-viding, to the evil example of others in the like case offending, and against the peace and dignity of the State of Alabama.

"And the jurors aforesaid, upon their oaths aforesaid, do further present, that the river Sucarnochee, that is to say a certain part of said river, lying and being in the county of Sumter aforesaid, is, and from the time whereof the memory of man is not to the contrary, hath been an ancient, common and public highway, free to the citizens of the State of Alabama, and of the United States, with their keel boats and other water crafts, to navigate, sail, row, pass, repass and labor, at their will and pleasure, without any impediment or obstruction, whatsoever. And the jurors aforesaid, upon their oaths aforesaid, do further present, that Robert Bell, late of said county of Sumter, aforesaid, laborer, on the first day of August, in the year of our Lord, one thousand eight hundred and thirty-six, and on divers other days and times, between that

day and the day of the finding of this indict-
ment, with force and arms, in the county aforesaid,
unlawfully and injuriously, a certain mill-dam, for
the purpose of arresting, withholding, and retain-
ing the water flowing down the said river Sucar-
nochee, before that time, built, erected and con-
structed, in and across the said river, with timber,
stone and earth, in section four, township eighteen,
range two, west, in said county of Sumter, by per-
sons to the jurors aforesaid, unknown, unlawfully
and injuriously, did continue, and yet doth conti-
nue, without opening in the dam across said river,
a good and sufficient lock to admit the passage of
keel boats and other water craft, of the width of
fourteen feet, for the admission and passage of such
boats and other water craft, as may be desired to
navigate said river Sucarnochee; by means where-
of, the navigation and free passage of, in, through,
along and upon the said river Sucarnochee and pub-
lic highway, on the day and year aforesaid, and on
the said other days and times, hath been and still is,
greatly straitened, obstructed and confined, to-wit,
in the county of Sumter, aforesaid, so that the citi-
zens of the State of Alabama, and of the United
States, navigating, sailing and rowing, passing, re-
passing, laboring and rowing with their keel boats
and other water craft, in, through, along, and upon
the said river and public highway there, on the
same day and year aforesaid, and on the said other
days and times, could not, nor yet can go, navigate,
sail, row, pass, repass, and labor with their keel
boats, and other water craft, upon and about their
lawful and necessary affairs and occasions, in,

5 P.    47.

through, along and upon, the said river and public highway there, in so free and uninterrupted a manner, as of right they ought, to the great damage and common nuisance of all the citizens of the State of Alabama, and of the United States, navigating in, through, along and upon, said river and public highway there, to the great obstruction of the trade and navigation of the said public highway, contrary to the form of the statute, in such case made and provided, to the evil example of all others in the like case offending, and against the peace and dignity of the State of Alabama.

"And the jurors aforesaid, upon their oaths aforesaid, do further present, that the river Sucarnochee, that is to say, a certain part of said river, lying and being in the county of Sumter, aforesaid, is, and from the time whereof the memory of man is not to the contrary, hath been an ancient common and public highway, free to the citizens of the State of Alabama, and of the United States, with their keel boats and other water craft, to navigate, sail, row, pass, repass and labor, at their will and pleasure, without any impediment or obstruction whatsoever. And the jurors aforesaid, upon their oaths aforesaid, do further present, that Robert Bell, late of the county of Sumter aforesaid, laborer, on the first day of August, in the year of our Lord, one thousand, eight hundred and thirty-six, and on divers other days and times, between that day and the day of the finding of this indictment, with force and arms, in the county aforesaid, unlawfully, wilfully and injuriously, a certain mill dam, for the purpose of arresting, withholding, and retaining the

water flowing down the said river Sucarnochee, before that time built, erected, and constructed, in and across the said river, with timber, stone, and earth, in section four, township eighteen, range two, west, in said county of Sumter, unlawfully and injuriously did continue, and yet doth continue, without opening, in the dam across said river, a good and sufficient lock to admit the passage of keel boats and other water craft, of the width of fourteen feet, for the admission and passage of such boats and other water craft, as may descend to navigate said river Sucarnochee, by means whereof, the navigation and free passage of, in, through, along and upon the said river Sucarnochee, and public highway, on the day and year aforesaid, and on the said other days and times, hath been, and still is, greatly straitened, obstructed, and confined, to wit, in the county of Sumter, aforesaid, so that the citizens of the State of Alabama, and of the United States, navigating, sailing and rowing, passing and repassing, laboring and rowing, with their keel boats and other water craft, in, through, along and upon the said river, and public highway there, on the same day and year aforesaid, and on the said other days and times, could not, nor yet can go, navigate, sail, row, pass, repass and labor, with their keel boats and other water craft, upon and about their lawful and necessary affairs and occasions, in, through, along and upon the said river and public highway there, in so free and uninterrupted a manner, as of right they ought, to the great damage and common nuisance of all the citizens of the State of Alabama, and of the United States, navi-

gating, in, through, along and upon the said river, and public highway there, to the great obstruction of the trade and navigation of the said public highway, contrary to the form of the statute, in such case made and provided, to the evil example of all others, in the like case offending, and against the peace and dignity of the State of Alabama.

"And the jurors aforesaid, upon their oaths aforesaid, do further present, that Robert Bell, late of said county of Sumter, laborer, on the first day of August, in the year of our Lord one thousand eight hundred and thirty-six, with force and arms, in the county aforesaid, and at divers other days and times, between the said first day of August, and the day of the finding of this indictment, with force and arms, a certain mill-dam, for the purpose of collecting, withholding, and retaining the water flowing down the said river Sucarnochee, in said county of Sumter, before that time made, erected, and constructed across the said river Sucarnochee, of logs, timber, stone, and earth, near the town of Livingston, in said county of Sumter, and near divers streets in said town of Livingston, being public highways, and near unto the dwelling-houses of divers of the good citizens of the State of Alabama, there situate and being, unlawfully, wilfully, and injuriously did continue, and still doth continue, by reason of which said premises, divers noisome, offensive and unwholesome smells, stenches, miasmas, during the time aforesaid, were from thence emitted and issued, so that the air then and there was, and yet is greatly filled and impregnated with the said smells, stenches, and miasmas, and was and is rendered

and become, and was and is corrupted, offensive, uncomfortable, and unwholesome, to the great damage and common nuisance of all the good citizens of the State of Alabama, there inhabiting, being, and residing, and going, returning, and passing through the said streets and highways, and to the evil example of all others in the like case offending, and against the peace and dignity of the State of Alabama."

A motion to quash this indictment being overruled, the defendant plead not guilty; whereupon a jury was impannelled, who found him guilty, as charged in the indictment, &c.

In the progress of the trial, the following points arising, they were, by the Court below, referred here, as novel and difficult.

First—" The defendant moved the Court to quash the indictment, on the ground, that the Court could not take cognizance—that the jurisdiction was vested in the County Court by an act of the Legislature,*—having control of the river Sucarnochee."

Secondly,—"The copies of maps were adduced

---

* The REPORTER has thought it advisable in order to more fully elucidate the peculiarities of this case, to insert a copy of the private statute above referred to.

"AN ACT

"To authorize Richard and Stephen Yarborough to erect a saw and grist mill on the Sucarnochee River, in Sumter county.

"Section 1. Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened, That Richard and Stephen Yarborough be, and they are hereby authorized to erect a saw and grist mill in section four, township eighteen, range two, west, on the Sucarnochee river, in the county of Sumter.

"Sec. 2. And be it further enacted, That the said Richard and Stephen Yarborough shall open in the. dam cross said river, a good and sufficient lock to admit the passage of

as evidence, to prove, that the river Sucarnochee, was a navigable stream, it appearing on the copies of said maps, that the sectional lines did not cross said river, and that the copies were proved by a

keel boats and other water craft, which said lock shall be the width of fourteen feet or more, if required, for the admission and passage of such boats and other water craft as may be desired to navigate said river.

"Sec. 3. And be it further enacted, That if the said Richard and Stephen Yarborough should fail or refuse to erect such lock or locks and other necessary conveniences for the passage of boats and other water craft as aforesaid, the said mill shall be deemed a nuisance and therefore removed as such.

"Sec. 4. And be it further enacted, That if the erection of said mill, as aforesaid, should flood or injure any land or lands not belonging to the said Richard and Stephen Yarborough, the said Yarboroughs shall pay all such damages as any person or persons may sustain, by the erection of said mill, and if any person or persons should be injured by said mill, they shall in all respects have such damages assessed as now required by law, and if the said Richard and Stephen Yarborough should fail or refuse to pay all such damages as may be legally assessed, the owner or owners of such flooded or injured land or lands shall immediately, after such refusal on the part of the Yarboroughs, have said mill removed as a private nuisance.

"Sec. 5. And be it further enacted, That if it shall be ascertained that the health of the people of the town of Livingston shall be materially injured or endangered by the erection of the mill hereby authorized, that then and in that case the power and authority herein given to construct such mill, shall be subject to revocation, and the judge of the county court of Sumter county, shall have power, and it shall be his duty, upon the application, in writing, of any three citizens of said town, to cause a jury to be impannelled and sworn to enquire and determine whether or not, in their opinion, the erection of said mill does materially injure or endanger the health of the inhabitants of said town of Livingston, and if such jury, upon enquiry into the facts, shall find that in their opinion the health of the people of said town has been, or is likely to be materially injured by the erection of such mill, it shall be the duty of said judge, upon the finding that such jury, to cause the dam of said mill to be abated as a nuisance: Provided, the owner of such mill shall have at least ten days previous notice in writing of such intended application."

witness, who had compared said copies with the original maps of survey."

Thirdly,—"That the defendant Bell, was not the owner of the land on which the dam was erected, but that one Rhodes, a citizen of North Carolina, was the owner, and that said Bell, was in the possession of said property as agent or overseer, and therefore could not be presented for the supposed offence."

The Court decided that the present defendant, could not justify a violation of the penal laws of the land, under the order of his employer.

The case was argued here by *Crabb* for the defendant, Bell, and by the *Attorney General*, on the part of the State.

GOLDTHWAITE, J.—On the trial of this case in the Circuit Court of Sumter county, several questions were reserved by the presiding Judge, for the consideration of this Court, which will be examined in the order they are placed in the record.

First,—It is insisted that the Circuit Court of Sumter, has no jurisdiction of the particular offence; because the Judge of the County Court, is authorised by the terms of a private act of the Legislature to remove the nuisance complained of. The act referred to by its first section, "authorises Richard and Stephen Yarborough to erect a saw and grist mill, on section four, township eighteen, range two, west, on the Sucarnochee river, in the county of Sumter."

· The second section, enacts, "that the said Yarboroughs, shall open in the dam across said river, a good and sufficient lock, to admit the passage of keel boats and other water craft, which lock shall be of the width of fourteen feet or more, if required, for the admission and passage of such boats and other water craft, as may be desired to navigate said river."

The third section, enacts, "that if the said Yarboroughs shall fail or refuse to erect such lock or locks, and other necessary conveniences, for the passage of boats and other water craft, as aforesaid, the said mill shall be deemed a nuisance and therefore removed as such."

The fourth section provides for the manner of ascertaining any private injury, which may be sustained, and points out a mode, by which damages for the same, may be assessed. And the fifth and last section, enacts, "that if it shall be ascertained that the health of the people of the town of Livingston, shall be materially injured or endangered, by the erection of the mill hereby authorised, that then and in that case, the power and authority, herein given to construct such mill, shall be subject to revocation, and the Judge of the County Court of Sumter county, shall have power, and it shall be his duty, upon the application, in writing, of any three citizens of said town, to cause a jury, to be impannaled and sworn, to inquire and determine, whether or not, in their opinion, the erection of said mill does materially injure or endanger the health of the inhabitants of said town of Livingston, and if such jury, upon enquiry into the facts, shall find

that, in their opinion, the health of the people of said town, has been, or is likely to be, materially injured by the erection of such mill, it shall be the duty of said Judge, upon the finding of such jury, to cause the dam of said mill, to be abated as a nuisance; *provided*, the owner of such mill, shall have at least ten days previous notice, in writing, of such intended application."

It cannot be contended, that any provision of the act recited, *expressly* takes away the jurisdiction of the Circuit Court, which must otherwise be exercised over this, as well as over other criminal offences, by virtue of the powers conferred by the sixth section of the fifth article of our Constitution; but it is urged that such is the implication arising from the third and fifth sections.

On looking into the third, it will be found not to touch this question; as it seems to provide, that the dam shall *be deemed a nuisance*, unless a lock of a particular description is left for the passage of boats, &c. This section does not, by implication, divest any tribunal, of jurisdiction, but leaves that to be exercised in such manner as previously was designated by law. The third count of the indictment is framed with technical accuracy, to present the very question, which arises on the construction of this section. If the Yarboroughs had proceeded in every other respect according to the act, and no injury, public or private, had ensued—the omission to provide the means, for the public to pass through the dam, would, of itself, be a nuisance, which should be abated.

5 P. 48.

The fifth section, when examined, will be found to give no aid to the position assumed. It neither confers, or assumes to confer, any criminal jurisdiction. It simply provides the mode, by which the privilege granted by the first section, shall be determined to be at an end; and for the resumption, by the State, of all its rights, of which one, not the least important, is to abate the existing nuisance.

The right to abate a public nuisance, is said to be common to every citizen of a community, because all may be injured by it; and if the law has made it the duty of a named officer, to abate such a nuisance, when ascertained in a particular manner,—no inference ought thence to be drawn, that it was the intention of the law, to abolish all other modes of abatement. Such a construction, would, in all cases, insure the escape from justice of the individual erecting or continuing the nuisance. If the position contended for, be correct, no one would be responsible, either civilly or criminally, for any nuisance, which grew out of the erection of this mill. The act certainly prescribes no punishment for the offender, and he might laugh to scorn, all attempts to reach him criminally, through any jurisdiction vested in the County Court.

It may be true, by the grant of the privilege in the first section, and the restraints which are imposed on the resumption of it, by the fifth, that an individual might not be guilty of an offence in erecting or continuing the mill, until the time, when the privilege should be revoked, in the manner pointed out by the section, last refered to.— This was a matter, resting on the evidence in the

cause, and if the inquisition had not been made, the defendant might have been entitled to his acquittal; but no question has been raised on this point, and we must presume the jury were satisfied with the evidence, submitted to them, that the defendant had contiuued the nuisance, as stated in the fourth count of the indictment, after it had become unlawful, or that the inquisition, mentioned and provided for in the fifth section, had been made.

The next, and perhaps the only difficult question, arises on the statement of the Court below, "that the copies of maps were adducd as evidence to prove that the river Sucarnochee, was a navigable stream, it appearing on the copies of said maps, that the sectional lines did not cross said river, and that the copies were proved by a witness, who had compared said copies with the original maps of survey."

We have been, and still are, at a loss to perceive, how this description of proof was deemed necessary to be resorted to, as the fact could perhaps have been more satisfactorily established, if it existed, in almost any other way; but the point was not the sufficiency, but the legality of this species of evidence, to ascertain the fact, then in issue. To make a navigable stream, three circumstances must concur.

First—The stream must have sufficient width.

Second—Sufficient depth, and

Third—A freedom from insurmountable obstructions.

The Court must intend, that the copies of the maps, introduced in evidence, were the public surveys made in pursuance of law. These maps, if

accurate, must necessarily shew the width of any stream, when the section lines do not cross the river, and on which fractional sections are, (in consequence of the lines not crossing,) obliged to be made. These fractional sections are always made on navigable streams, though we do not understand the fact to be otherwise, on many streams which are not navigable.

This view of the case would indicate that the surveys might be legal evidence to establish the width of a river, which is one of the facts from which its capability for navigation, might be legally inferred, and being thus legal in its character, its sufficiency was matter of consideration alone for the jury.

But it is urged that the copies which were introduced, were not the copies from the *original* maps, but from the land office maps, in the office of the register. To this we can only answer, and refer to the record, which states them to be copies, proved by a witness, to have been compared with the *original maps.* To intend otherwise, would be to violate all rule, and however the *fact may be,* we must determine from the record.

That sworn copies are admissible in evidence, has already been decided by this Court. (*Hamner vs Eddins,* 3 Stewart 192.)

The only remaining question is, whether the defendant is not entitled to be discharged from the indictment, as he is shewn to have possession of the premises, which are alleged to be a nuisance, not in his own right or by virtue of any claim, but merely as the overseer or agent of another.

The duty which every individual owes to the State, of which he is a citizen, and the community, of which he is a member, is certainly paramount to any obligation, imposed on him by his voluntary service and obedience to another. To permit an agent or servant to excuse himself for an infraction of the criminal laws of the State, because of his agency or servitude, is a principle which can have no authority, from reason, for its support. Human laws must necessarily attach immediately on those, who do, or omit the act; and although the director, instigator, aider and abettor, can in most cases be also reached by the same law, the actual offender can in no case avoid the consequences of his unlawful act or omission.

The fact which is now attempted to be introduced, as a legal bar to this indictment, might well be urged, as a circumstance to mitigate or reduce a fine or other punishment, when discretionary; and would no doubt receive sufficient attention from a jury, the only proper tribunal, to judge of the effect to be given to such an excuse.

The Court are unable to discover any error in the action of the Court below, on the questions referred to us, and the judgment rendered must be affirmed.