# Adler & Co., *et al.*, *v.* Pruitt.

*Damages for Creating and Maintaining a Nuisance.*

(Decided July 6, 1910. 53 South. 315.)

1. *Nuisance; Authorized Act; Sewerage Plant.*—Where a county, through a commission created by a local act authorizing a sewer system and purification plant constructed said plant after contracting with an individual to pay for the cost of the plant and its maintenance in consideration of the exclusive right to use the products of the plant, the county stipulating for the exclusive control of the purification of the sewerage, and the plant was built and the individuals operated it, and paid the cost thereof directly, but the plant was unequal to the accomplishment of its purpose, and a nuisance was created by its operation, in the absence of an express statutory provision, it will not be assumed that it was intended to legalize an act necessarily resulting in a nuisance, nor that the system would have been constructed except for treatment of the sewerage in a purifica-

[Adler & Co., et al. v. Pruitt.]

tion plant, and hence the proximate cause of the nuisance was not the statutory authorization but was the operation of the plant by the individual and consequently he was liable therefor.

2. *Same; Proximate Cause.*—Usually the actual operation of a plant must determine whether its operation will become a nuisance, and as between one who furnishes money for the construction of a plant, lawful in itself, and one who operates the plant, the former is not generally chargeable with the knowledge that the plant will become a nuisance; the intervening cause of actual operation becoming the proximate cause of resulting nuisance.

3. *Same; Complaint; Sufficiency.*—A complaint claiming of the defendant a specified sum of damages for the maintenance of a nuisance and describing a nuisance in such a way as to inform the defendant, the jury and the court of the facts on which plaintiff relies for a cause of action, is sufficient within the provisions of section 5321, Code 1907.

4. *Same; Pleading; Issue and Proof.*—Where the action was for a nuisance caused by the operation of a sewerage plant, and the evidence showed a common purpose by the builder and operator of the plant that the solid product of the plant should be used on a tract adjoining the plant, and that it was so used, such tract was a part of the plant in such manner as that damages were recoverable from the nuisance caused by spreading the solid matter over the tract, although the complaint attributed in general terms the injury to the building and operation of the plant.

5. *Torts; Joint Tort Feasors.*—Those who contribute to the tort with common intent are joint tort feasors.

6. *Pleading; Code Form; Sufficiency.*—A complaint conforming substantially to the schedule of form laid down in section 5322, Code 1907, has the force of law as to form and is sufficient.

7. *Evidence; Opinion; Expert; Common Knowledge.*—An expert may not give a mere opinion as to matters within the knowledge of a man of common experience and observation.

8. *Same; Opinion Evidence.*—Where the nature of a subject is such that it cannot be described in language so as to accurately inform the judgment of the jury, the opinions of ordinary witnesses may be received.

9. *Same; Value of Property.*—Where witness disclaims familiarity with the value of property he should not be permitted to give his opinion as to its value.

10. *Same.*—It is not necessary to be shown that one is an expert to authorize him to testify to the value of the land, but where it is shown that he has given special attention to land values and has had uncommon occasion to know them, he is competent to state his opinion.

11. *Same.*—A witness who was familiar with a sewerage purification plant and had visited it under different weather conditions and at various times was competent to give an opinion as to whether under any kind of wind or weather condition he could smell odors from the plant while standing at a certain place, in order to show the volume and intensity of the odors from the plant; the consideration

[Adler & Co., et al. v. Pruitt.]

that the wind blew away from him on the occasions he visited the plant, and that the jury were as familiar with the facts, went merely to the weight of the evidence, and not to its admissibility.

12. *Trial; Reception of Evidence.*—Unless the question is put and the answer given in such rapid succession that a fair opportunity to state objection is not given, an objection to evidence will not avail where no objection is interposed to the question; but where the question and answer follow rapidly, the court should entertain objection promptly made thereafter; but the ruling rests within the sound discretion of the trial court.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Suit by Mary Ella Pruitt against Adler & Co. and others. From a decree for plaintiff against defendant Adler & Co., it appeals. Reversed and remanded.

Having in view the construction and maintenance of main or trunk lines of sanitary sewers for the purpose of carrying away the sewerage of municipalities and thickly populated communities in the county of Jefferson, the Legislature by its act of February 28, 1901 (Loc. Acts. 1900-01, p. 1702), created a public corporation known as the Jefferson County Sanitary Commission, with powers ample for the need in view. Section 5 of the act provided that the commission should act and be held to act for the county of Jefferson, and that no member thereof should be held personally liable for any act of said commission, or for any act done by him as commissioner, while acting in pursuance of the powers and authority conferred. Proceeding in accordance with the purpose and authority of the act, the commission procured the construction of a system of sanitary sewers suitable for the drainage of large areas in Jefferson county, including parts of the cities of Birmingham and Bessemer. Section 8 of the act authorized the commission to erect purification plants at points where sewerage might be concentrated, "and do everything necessary or needful for the purification or destruction of the sewerage," and empowered the commission to ac-

quire by gift, purchase, or condemnation any lands deemed necessary for the construction of sewers and stations for the disposal or purification of sewerage. At the outlet of the sewer the commission acquired a tract of land and upon it constructed a purification plant. The plant consists of a series of tanks, covering something less than an acre, through which the sewerage slowly flows by gravitation depositing its sand and grit in the first of the series, known as the grit chamber; while in succeeding tanks the organic matters rise to the surface and form a thick scum which, after fermentation during some weeks, is removed at intervals and used to fertilize the surrounding tract of land. The water, thus freed of the grit and in large measure of the offensive organic matter, issues from the plant in a condition suitable for manufacturing and certain commercial purposes and valuable for such purposes at that point.

Prior to the construction of the purification plant, the sanitary commission entered into a contract with the appellants by which the latter, in consideration of a lease of so much of the tract of land as may not be needed for the purification plant and of the exclusive right to have and use the separated products of the plant for a term of 99 years, bound themselves to pay the cost of its construction—a large sum—and the cost of its maintenance from year to year, of which accounts are kept by the county. The plant was constructed for the county by its own agents and contractors; the cost being paid by appellants according to the agreement. The county stipulated for the exclusive and absolute control of the purification of the sewerage and the right to judge the means to be used and the degree to which the sewerage is to be purified. Section 7 of the contract provided as follows: "The party of the first part is

willing for the party of the second part to operate and maintain the septic tanks, filter beds and such other means and devices for purifying said sewage as the party of the first part may construct and put in use, paying the cost and expense of such operation and maintenance, directly; instead of reimbursing the party of the first part for such cost and expense as herein provided. Provided, however, that the party of the first part shall have the exclusive right at all times to direct the mode and manner of such operations and maintenance, and shall have at all time the exclusive control over employee or employees working in any way in and about such operation and maintenance. And the party of the first part may at any time it sees fit take the entire matter of the operation and maintenance of the septic tanks, filter beds or other devices or means of purification of the sewage out of the custody of the party of the second part, the party of the first part paying the cost and expense thereof and requiring reimbursement for such cost and expense from the party of the second part, as herein provided." Appellants have exercised their option and are operating the plant paying the cost thereof directly. Ordinarily this involves no more than the service of one man for less than an hour a day. The plant operates automatically in large measure and needs only that a coarse screen, arranged to catch matters of some bulk and foreign to sewerage, be kept clear so as not to interrupt the flow of the sewerage into the tanks. At such time as it is necessary employees of appellants go there under the orders of the commission's engineer and do what is necessary about the operation of the plant. These men are employed and paid by appellants, but act under the direction of the engineer. Plaintiff (appellee) owned and lived up-

on a small but well-improved and well-ordered farm about one-half a mile from the purification plant.

PERCY, BENNERS & BURR, for appellant. A witness should not be permitted to express his opinion as to the quantum of damages resulting from an injury.—*Tenn. C. I. & R. R. Co. v. McMillion,* 49 So. 880; *C. of G. v. Barnett,* 151 Ala. 407. A witness qualified to speak should be permitted to express an opinion as to whether an odor with which he was familiar could be detected under certain conditions and circumstances with which he was familiar.—*So. Ry. v. Bonner,* 141 Ala. 517; *A. G. S. v. Lynn,* 103 Ala. 134; *E. T. V. & G. v. Watson,* 90 Ala. 41; *McVay v. The State,* 100 Ala. 110; *Cox v. The State,* 76 Ala. 66. A witness should not be permitted to testify to a fact which he does not know or to express an opinion when he says in effect that he has none. —*White v. Anniston,* 49 So. 1030; 91 Ia. 285. One is not liable in damages for either the creation or maintenance of a nuisance unless his action was the proximate cause of the injury.—*Moore v. Langdon,* 2 Mackey 127; 47 Am. Rep. 262; *State v. Holman,* 104 N. C. 861; 10 S. E. 758; Joyce on Nuisances, Sec. 476; *State v. Rankin,* 3 S. C. 438; 16 Am. Rep. 737; *Carmichael v. Texarkana,* 94 Fed. 561; 8 A. & E. Enc. 571; *Brimberry v. S. & W. R. R. Co.,* 3 S. E. 274; *Commonwealth v. Western U. T. Co.,* 112 Ky. 355; 67 S. W. 59; 99 Am. Rep. 297; *L. L. Brown Paper Co. v. Dean,* 123 Mass. 267. Counsel insist that the court should have sustained the demurrers to the 2nd count of the complaint, but cite no authority in support thereof.

PINKNEY SCOTT, and BOWMAN, HARSH & BEDDOW, for appellee. The complaint was in code form and hence, sufficient. In any event, the assignment was not suf-

ficiently argued to avoid a presumption of waiver.—*So. Ry. v. Weatherow,* 153 Ala. 177; *Hodge v. Rambo,* 155 Ala. 179. There was no error in the action of the court on the evidence.—*T. C. I. & R. R. Co. v. McMillion,* 49 South. 880; *Hodge v. Rambo, supra; So. Ry. Co. v. Morris,* 143 Ala. 631; *M. M. M. Co. v. Leith,* 50 South. 214. The appellants were liable under the evidence in this case.—Joyce on Nuisances, sec. 38, 136, 157, 158, 160, 161 and 283; *Detroit W. L. Wks. v. People,* 9 L. R. A. 722; *Cameron v. Kenyon,* 44 L. R. A. 508; 60 N. J. L. 201; 3 Denio. 306; 51 Hun. 605; 89 Minn. 397; *Grady v. Walsiner,* 36 Ala. 382; *State v. Bell,* 5 Port. 380; *Bir. v. Land,* 137 Ala. 538; 145 Ill. 23; 72 Cal. 180. Counsel discuss the charges given and refused, and insist upon the authorities above that no errors were committed.

SAYRE, J.—Plaintiff sued the Jefferson County Sanitary Commission, Jefferson county, and Adler & Co., in two counts, the one as for the creation, the other as for the maintenance, of the purification plant as a nuisance, charging that it emitted foul and sickening odors and noxious gases which caused plaintiff and her family to be sick, and greatly impaired the value of her property. Rulings of the trial court having resulted in the elimination of the county and the commission as parties defendant, the cause proceeded to judgment against Adler & Co. The question of leading interest is presented by appellants' contention that the act of municipal authority as a result of which the sewerage was caused to flow through the sewer and into the filtration or purification plant must be taken and considered as the sole proximate and efficient cause of the injury which thereby resulted to the plaintiff, and, along the same line, that neither the act of their employees in re-

moving from time to time obstructions to the flow of sewerage into the plant under the circumstances detailed in the statement of facts, nor their own immediate act of reimbursing the county for the cost of the plant, nor these acts collectively, can in law be considered as the proximate cause of the presence of the sewerage at the place, any more than the act of the capitalist who lent the money with which to build the sewer, or the engineer who designated, or the contractor who executed it. In this connection, it may be well enough to note that the sewerage system which had its outlet into the purification plant was an artificial system, and while doubtless it was constructed along the line of least difficulty—that is, in general conformity with the natural drainage of the territory it served—it does not appear that without it there would have been any natural concentration of offensive matter in hurtful proximity to plaintiff's property. In the absence of express statutory provision to that effect, it cannot be assumed that it was intended to legalize an act which would necessarily result in a nuisance, nor can it be assumed that the sewer would have been constructed to discharge a great volume of sewerage at a point where it would seriously interfere with plaintiff's right to enjoy pure and wholesome air in connection with her use of her property but for the provision for its treatment in the purification plant. The plant was authorized, and there is no doubt that it was designed and expected to render the sewerage innoxious. The evidence went to show that the plant was constructed according to the latest and best scientific principles governing the disposal of sewerage by purification or filtration plants, and that there was no lack of judgment and care in its operation. Much of the evidence also conduced to the conclusion that the plant was not a nuisance in fact;

but as to that there was such weight of opposing testimony as clearly required the submission of that question to the jury. It must, therefore, on the evidence which tended to support plaintiff's theory of the case and in the state of our knowledge of the subject, be assumed that the plant was inherently unequal to the complete accomplishment of the end in view. If so, and if the result of the construction and maintenance was a material interference with plaintiff's comfortable use and enjoyment of her property, and her health, there was an actionable nuisance, and there can be no reason for saying that the plaintiff must have suffered though the plant had not been constructed, nor any occasion to speculate as to the consequences of a different arrangement, for, if it had been determined that the arrangement should be different in any respect, it is impossible to know in what respect, and with what different result, it would have been different. On plaintiff's evidence the plant as operated was a nuisance working peculiar and special injury to her.

We are not now concerned with the materiality of any distinctions which may be drawn between the county and its official agents, the Sanitary Commission, on the one hand, and the defendants, on the other, in respect to their responsibility for the injury alleged in this cause. In view of the responsibility of the county for consequential injuries done to property in the exercise of the right of eminent domain (*Dallas County v. Dillard*, 156 Ala. 354, 47 South. 135), that might involve questions of some difficulty. The question presented is whether the defendants were joint tort-feasors with the county and its commission in creating and maintaining the nuisance. Those are joint tort-feasors who contribute to the tort with common intent—in this case, not of course the intent to work injury to the

plaintiff, but the intent to maintain the purification plant which did result in injury. If it be assumed for a moment that the defendants co-operated with private individuals as they did with the county and its commissioners, it would seem to be clear that they thereby became liable with those individuals as joint tort-feasors, not because defendants furnished the money with which to build the plant, nor because they contracted to receive the valuable separated constituents of the sewerage, but because they actively participated in the daily operation of the plant. Not every one who furnishes money for the construction of a plant lawful in itself, or who bargains for its lawful output, is chargeable with knowledge or purpose that it will become a nuisance. An independent cause must intervene—the actual operation of the plant—to decide whether its operation shall become a nuisance; such intervening cause becoming thereby the proximate cause of the resulting nuisance. The injury may be traceable in a way to his contribution, for plants may not be operated without money with which to build them, and it may be assumed that purchasers for their produce are ordinarily essential; but that connection is, in the common phrase, too remote. Common judgment approves this conclusion, and, if it seems vague, it is because, as an able writer has observed, in the analysis made necessary by the separation of findings of fact from conclusions of law, the common law "has grappled more closely the inherent vagueness of facts than any other system."—Pollock on Torts, 33. But defendants did more than furnish money and bargain for the output. They participated actively in the operation of the plant, in order that they might get for themselves the benefit of that operation, and that operation resulted in a nuisance. Having the option to take the products of the plant in considera-

[Adler & Co., et al. v. Pruitt.]

tion of reimbursing the county for the money advanced to construct it, and the expense of operating it, or "to operate and maintain the septic tanks, filter beds, and such other means and devices for purifying said sewerage as the party of the first part may construct and put in use, paying the cost and expense of such operation and maintenance directly," as the contract provided, they elected to operate and maintain the plant and to do what was necessary to that end, whether much or little. The law deals with things as they are, and we are not permitted in the administration of justice to speculate as to what different results might have flowed in law or in fact, from a different set of facts. Nor was their responsibility for consequences changed by the fact that the county and its commission retained control of the manner in which the plant was to be operated. Defendants, none the less, contributed proximately and efficiently to the flow of the sewerage into the tanks, and thereby to the creation and maintenance of a nuisance of its detention there. To this situation the remark of Goldthwaite, J., in *State v. Bell*, 5 Port. 365, is pertinent: "Human laws must necessarily attach immediately on those who do, or omit, the act; and although the director, instigator, aider, and abetter can in most cases be also reached by the same law, the actual offender can in no case avoid the consequences of his unlawful act or omission." As for anything now appearing, defendants must be held responsible to plaintiff for whatever injury flowed to her from the operation and maintenance of the plant.

Appellants lay stress in argument upon some cases which do not seem to impair what force there may be in what we have had to say of the case here. Without indulging extended comment, we think a brief statement of the most important of them, in very nearly the

language of the headnotes, will suffice to distinguish them. Thus in *Brown Paper Co. v. Dean,* 123 Mass. 267, it was held that an agent, who merely carries on a mill for the owner's benefit, was not liable for the maintenance of its dam at too great a height, whereby water was set back to the injury of another mill owner; the dam being a permanent structure, which had not been changed during the time complained of, and the defendant having neither ownership, possession, nor such control as would authorize him to change it. In *Moore v. Langdon,* 2 Mackey, 127, 47 Am. Rep. 262, the owner of land laid it off into lots and streets, sewered the streets, and sold the lots with an easement in the sewers, retaining no control. The grantees and others voluntarily connected their premises with the sewers, and thus created a nuisance. The grantor was held not liable. But it was said that other facts might put a different complexion upon the case, as, for instance, if the defendants had warranted the right to use the sewers to the lot holders, or retained control over them, and knowingly permitted them to be used offensively, or other equivalent facts which would connect them directly with the use complained of. And in *State v. Holman,* 104 N. C. 861, 10 S. E. 758, defendants maintained a dam which had been erected about 75 years before, and had not been raised since its erection. Persons owning land higher up the creek made changes which caused sand and mud to be washed into the defendant's pond and the water to become stagnant and to emit unpleasant odors. The ruling was that the nuisance complained of was entirely the result of agencies and causes for which the owners were not responsible. In each of these cases the finding was that the defendant had not contributed proximately to the nuisance complained of; but the reasoning by which that con-

clusion was reached is not understood to be out of line with what we have said in reaching a different conclusion in the case at bar.

Coming now to those specific assignments of error which have been argued, we state our conclusion that count 2 of the complaint adequately sets forth a cause of action. The count "claims of the defendants the further sum of $25,000 as damages for the maintenance of a nuisance," and then describes the nuisance in such way as to inform the defendants, the jury, and the court of the facts on which plaintiff relied as a cause of action. The specific objection urged is that there is no categorical averment that the nuisance was maintained by the defendants. Section 5321 of the Code of 1907 commands brevity in pleading, but brevity consistent with perspicuity and such an intelligible statement of facts as that a material issue in law or fact can be taken by the adverse party. The Code also contains a number of forms of complaint, which have the force of law, and provides, in section 5322, that any pleading which conforms substantially to the schedule of forms is sufficient. In *Brooklyn Life Ins. Co. v. Bledsoe*, 52 Ala. 538, a complaint on a policy of life insurance, confessedly insufficient at the common law, was sustained because it was in substantial conformity to the analogous forms prescribed by the Code for complaints on policies of marine insurance and on dependent covenants or agreements. Several of the Code forms are open to the objection taken by the appellants' demurrer to the count in question. Thus in the complaint for slander there is no averment in terms that the defendant did falsely and maliciously charge, etc. So likewise in the forms for deceit in the sale of chattels, and for trespass in taking goods. Most of them, however, are above criticism in that respect. Keeping in line with the pol-

15—169

icy of the statute, we do not think the count should be construed as intending to state a cause of action against the defendant for the act of others not sued, as the appellants too narrowly construe it, but rather that it must be held to adequately state a cause of action against the parties sued, and that without trenching upon the right of parties defendant to be informed of the cause of action which they are summoned to answer.

McCartie was from his observation and study of septic tanks or purification plants entitled to consideration as an expert on that subject. But while his study and experience of, and connection with, sanitation, would probably have led him to a closer observation of the odors emitted from the tanks, and may thereby have added weight to his testimony as to that, as an expert he could not give a mere opinion on a subject within the knowledge of all men of common experience and observation. But in many cases the opinions of ordinary witnesses are received from necessity, as where the nature of the subject is such that it cannot be stated or described in language which will accurately inform the judgment of the jury. The books abound in examples, and there are a number of cases in our reports which illustrate the relaxation of the general rule against the reception of nonexpert opinions. For example, it was held in *McVay v. State,* 100 Ala. 110, 14 South. 862, that a witness might answer, "It was a still night, and in my opinion they could have heard it." In *Rollings v. State,* 136 Ala. 126, 34 South. 349, a witness was allowed to testify that in his judgment females were near enough to hear certain language; this being considered to be the statement of a collective fact based on a knowledge of the manner of the utterances and of the situation of the females. And in *E. T. V. & G. R. R. Co. v. Watson,* 90 Ala. 41, 7 South. 813, it was said

that: "While it would be a matter of common knowledge how far one could ordinarily see an object as large as a horse, and therefore not the subject of an opinion, the jury being as competent to judge of this fact as a witness, this inquiry assumed a different aspect when applied to the particular locality on the railroad track, or right of way going from the depot towards the scene of the injury. It may have been impracticable to lay before the jury all the details upon which such a collective fact was found. The soundness of the conclusion could be tested by the right of cross-examination." It was of vital importance in this case that the jury should know whether odors issued from the tanks in such volume and intensity as to affect plaintiff's well-being and the value of her property one-half a mile away, or on the public road on which the plaintiff lived. The witness was shown to be familiar with the plant, having visited it a number of times under different weather conditions and at different seasons. In our judgment it was harmful error to deny to defendants an answer by this witness to their question: "State whether or not in your opinion (asking here nothing different from his judgment based upon known circumstances [*McVay v. State, supra*]) under any wind conditions or weather conditions you (here used impersonally to inidcate any one, though that is not of controlling consequence) could smell odors from that plant up there on the public road." This was one way, and a natural and legitimate way in our judgment, of demonstrating the volume and intensity of the odors which came from the tanks; and on the facts shown we will not go to the length of assuming that the witness had not a normal sense of smell, or that the wind blew away from him on those occasions when he was at the plant, or that he would have undertaken to speak of a situation with which

he was unacquainted, or that the testimony of experts is notably unreliable, or that the jury were so well informed as to the facts that they would not have believed him in any event, as it is variously suggested we might do in order to save error. Those considerations went to the weight of the evidence sought, and so far as they involved facts, as distinguished from plaintiff's theory of general unreliability, might have been developed by cross-examination.

After stating that the sewerage was collected in the tanks and was fermented there for weeks or months, which testimony was confessedly within the issues presented, the witness Bainter testified that it was then hauled out and distributed over the ground. There was no error in refusing to exclude this last as unresponsive and irrelevant. The complaint did not specifically charge that defendants had added to the alleged nuisance of the purification tanks by spreading the solid matter separated from the sewerage as a fertilizer over the surface of the ground connected therewith. Her injuries were attributed in general terms to the creation and maintenance of the purification plant. We do not assume that a farm for utilizing the solid product of a purification plant is inherently a part of such a plant, for that product may as well be used in remote places. But here the evidence showed a common purpose and contrivance on the part of those concerned in the building of the plant, as well as those concerned in its operation, that the solid product should be used on the adjacent tract, and its use accordingly. The tract was in fact a part of the plant, and this is not changed by the further fact that the lessor reserved the right to change or enlarge the plant from time to time as it might see fit. Under the circumstances shown, the spreading of the solid product of the plant

[Adler & Co., et al. v. Pruitt.]

over the surface of the ground connected therewith was a part of the operation of the plant, and was provable under the complaint.

In respect to those assignments of error which relate to rulings on the testimony of the witness Martin, we think it safe to say that a witness who disclaims familiarity with the price of property should not be permitted to give his opinion as to its value. The witness who undertakes to speak in regard to the value of a piece of land need not be an expert, if one who has given special attention to land values and has had uncommon occasion to know them may be so denominated, though that would affect the weight of his testimony, but should be able to say at least that he thinks he knows the value of lands in the neighborhood; and, obviously, he should be required to show that he has had some means of knowledge. It would be idle, or worse, to allow witnesses to give their opinions in evidence unless they appear to have better means of knowledge than the jury may be supposed to have in common with all other persons.—See Jones on Evidence, § 363, and authorities there cited. The trial court does not appear to have observed this rule.

Of other exceptions reserved in connection with the testimony of this witness we do not find it necessary to say more than that, while a party waives an objection to evidence for irrelevancy not made in due season, which means in general before the question calling for the testimony is answered, if the question is put and the answer given in such rapid succession that the party objecting has not fair opportunity to state his objection, it is the duty of the court to entertain the objection when thereafter promptly made. In the nature of things the management of such occasions rests in the discretion of the trial court.

[Brown v. Birmingham Water Works Company.]

We think the judgment below should be reversed, and the cause remanded for another trial.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.