64 So.2d 594
**HOUSING AUTHORITY OF CITY OF DE-CATUR v. DECATUR LAND CO.,**
**Limited, et al.**
**8 Div. 649.**

Supreme Court of Alabama.
April 2, 1953.

Britnell & McEntire, Decatur, for appellant.

Norman W. Harris and Julian Harris, Decatur, for appellees.

## SIMPSON, Justice.

This is a condemnation proceeding instituted by petitioner. Housing Authority of the City of Decatur, Alabama (appellant here), against Decatur Land Company, Ltd., a limited partnership composed of certain named individuals, seeking to condemn ninety-six lots in Decatur owned by the partnership and described in the petition for condemnation. Code 1940, Title 25, Chapter 2.

Upon the trial of the cause in the circuit court, the jury fixed the valuation at $34,560 and judgment was rendered accordingly. Petitioner, insisting that the sum was excessive and that certain errors were committed with reference to the introduction of evidence bearing on the question of valuation, has prosecuted this appeal.

The witnesses entertained greatly disparate views as to the value of the property, with estimates ranging from $25,500 to $38,000. It seems that the divergence of opinion, to a considerable extent, arose by reason of an open drainage ditch which traversed the property. The property owner had previously granted a drainage easement to the City of Decatur with a proviso that the property owner might eliminate the easement by constructing a proper drainage system according to a sewer drainage plan which might be approved by the city engineer. The city engineer, a witness for the petitioner, testified on cross-examination that, prior to the condemnation, he had made such a plan, that that plan would effectively drain the property, and that the proposed plan had been approved and adopted by the Board of Commissioners of the city. The witness further testified that at the time of the condemnation the cost of that drainage system would be $13,811.73, using city labor, which would be "a little cheaper than a contractor." This testimony went in without objection.

Petitioner (condemnor) was allowed to prove by another of its witnesses, the engineer who was employed by the Authority to undertake the drainage project on the property, that the cost was $32,000 and that the price was fair and reasonable. The defendant property owner duly objected and excepted to this testimony for the reason that whatever the Housing Authority and the federal government might have done with the property to drain it would shed no light on the question of valuation, since that drainage project was adapted to the particular improvement which the Authority desired to place upon the property. The objection was perhaps well taken as res inter alios acta, Andrews v. Tucker, 127 Ala. 602, 29 So. 34; 20 Am.Jur. 280, § 302, but we need not enter into a discussion of that legal principle. The question here to be considered is the countervailing testimony which was introduced by defendant to discredit the accuracy of such a high drainage cost as compared with the estimate previously approved by the city engineer as an adequate drainage system. To discredit the propriety of such a high drainage cost and thereby impeach petitioner's said engineer witness, the defendant was allowed to show by cross-examination of this witness that the total price for the construction of the housing project was $1,242,000, with money being furnished by a loan from the United States government to the City of Decatur until a bond issue could be floated by the Housing Authority to repay it. It seems, from argument of appellee's counsel, that this testimony was admitted on the theory that the high-cost drainage project was not reasonably necessary to render the property usable and marketable considering its location and terrain, but was due to the peculiar use to which it was to be put by the Authority, viz., such a high-cost development with "easy money" from the federal government. One of the principal arguments for error is the ruling of the court admitting this testimony. For several reasons we have concluded that the record before us.

does' not invite a reversal on the stated ground.

■ At the outset it is well to take notice of the recognized rule that timely objection to a question is necessary and the point is not preserved if the objector speculates on the answer and waits until after the answer to reserve an exception to the ruling. One Paige Automobile v. State, 203 Ala. 682, 85 So. 17; Adams Hardware Co. v. Wimbish, 201 Ala. 547, 78 So. 901.

■ The evidence of the total contract price for the project comes within the influence of the aforestated rule. Without considering the generality of the objection, viz., "we object," no exception was reserved until after the testimony had been given by the witness and, therefore, error cannot be predicated on the admission of such evidence.

■ Counsel representing the property owner evidently made some argument before the jury about the government furnishing the money, which the court did not exclude on motion of petitioner, but if the argument was beyond the bounds of legal propriety the record does not sufficiently disclose what was said in its context for us to say the argument was improper. Ferguson v. State, 36 Ala.App. 358, 56 So. 2d 118.

■ The point was preserved with respect to proving where the money came from, but that assignment of error, together with the other two assignments of error, are argued together, resulting that the court could well decline to review the last-mentioned assignment, since the first two are unavailable and without merit. Aircraft Sales & Service, Inc., v. Gantt, 255 Ala. 508, 52 So.2d 388.

But in deference to counsel and speaking to the merits of the assignment, we will observe that we are not so convinced that the considered evidence was inadmissible on cross-examination of said witness as bearing on the accuracy of his testimony. The evidence of the cost of the project, the extensive nature of the building program, the remaking of the whole landscape, with money for the undertaking coming from the federal government, would in our view have had some bearing on the value of the opinion of this witness when he testified to such a high drainage cost ($32,000) in contradistinction to the testimony of petitioner's other witness, the city engineer, who had previously stated that the cost of draining the project would reasonably have been about $13,000. To say such evidence had no probative value as bearing on the accuracy of the opinion of the Authority's witness under the peculiar circumstances of the case would be to close one's eyes to actual reality.

■ It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony. Both our appellate courts have approved the principle stated in 2 Wigmore on Evidence, 2d Ed., § 949, p. 232: "The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place." Louisville & N. R. v. Martin, 240 Ala. 124, 198 So. 141, 144; Sowell v. State, 30 Ala.App. 18, 199 So. 900. And for emphasis we repeat the oft-stated rule that the latitude and extent of such cross-examination is a matter which of necessity rests largely within the sound judicial discretion, which will not be revised on appeal except in extreme cases of abuse. Such cross-examination may even pertain to irrelevant and immaterial matters as bearing on the memory, accuracy, credibility, interest or sincerity of the witness. Ex parte State, 199 Ala. 255, 74 So. 366; Cox v. State, 162 Ala. 66, 50 So. 398; Marler v. State, 68 Ala. 580. To be sure, this may be a borderline case, but in view of the circumstances under which the evidence was allowed and the seemingly high estimate of the drainage cost given by the Authority's said witness, we are not prepared to say that the trial court so grossly abused his discretion in allowing the stated cross-examination as to authorize this court to pronounce error in the ruling.

The next assignment of error argued is numbered 4. That assignment contains six

subheads and in essence comprehends six points, some unrelated to others. In legal effect, then, the rule, supra, in Aircraft Sales & Service, Inc., v. Gantt, has been transgressed. Also, however, in deference to argument of learned counsel, we will show that the assignments are not well-taken.

■■■ 4(a) and 4(b). It is largely addressed to the sound judicial discretion as to whether a witness has qualified as an expert on a matter inquired about, here with respect to the value of the condemned land, so as to permit his testimony. Cannon, witness for property owner, testified he was a mortgage loan appraiser for the Prudential Insurance Company, having charge of all north Alabama; that he made frequent trips to Decatur, was familiar with the maps of the town and with this property and that surrounding it and that he knew the market value of the property at the time of the taking. The court did not abuse its discretion in permitting the witness to give his opinion on value.

"It is a settled rule of evidence that, when the witness knows the property, and testifies that he knows the market value of the same, this proof, at least prima facie, meets the required test of qualification. * * *" American Ins. Co. v. Fuller, 224 Ala. 387, 388, 140 So. 555; 159 A.L.R. 30.

■■■ Of course, the preliminary question to the witness. "Do you feel [amended to "form an opinion"] that you are qualified to testify * * * as to the value of real estate in Decatur with particular respect to value of it around East Decatur and more particularly East Acres property" (the property in suit), was not objectionable. Adler & Co. v. Pruitt, 169 Ala. 213, 229, 53 So. 315, 32 L.R.A.,N.S., 889.

■■■ 4(c). This assignment of error relates to questions propounded to witness Cannon as to his opinion of the most feasible use that the property might be put to with respect to the construction of dwelling houses, the area being an area where dwelling houses were being constructed or had already been constructed.

In the course of this questioning the witness was allowed to introduce a map which he had made of the subject property, illustrating the witness' opinion as to some slight replatting that would give the property maximum value. The map, of course, did not purport to be exact and was merely to illustrate the witness' opinion as to the adaptability of the property for dwelling house construction. Appellant objected on the ground (1) that it was not identified as the property involved; (2) that it was not shown that the witness or an engineer drew it; and (3) that it was not shown to be drawn according to scale. None of these objections were well taken and, of course, all other grounds were waived. Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302(9), 37 So.2d 212.

But this aside, "it is relevant to inquire into the several elements of value, such as the uses to which the property is adapted, although not presently so used, if it appears such prospective use affects the present market value of the property. Whatever an intelligent buyer would esteem as an element of value at the time of taking may be considered. * * *" Alabama Power Co. v. Henson, 237 Ala. 561, 566, 187 So. 718, 721.

■■■ As before observed, the main controversy about valuation revolved around the drainage ditch and Cannon's map was merely a proposed replatting of a small portion of the property traversed by the drainage ditch so as to illustrate that his plan would make these few lots more valuable and make the ditch a less deterrent to the valuation. Evidence of value of the property to any use for which it is reasonably adapted is admissible and to furnish a plan to this effect was within the stated rule. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 7 A.L.R.2d 773. This Thornton case only condemned the effort to introduce a tentative plan of a subdivision which showed the proposed selling prices of individual lots therein, but approved the principle that evidence of value of property to any use for which it is reasonably adapted would be admissible.

4(d). This assignment of error complains of the trial court's action in refusing to allow defendant's witness Speake to testify, on cross-examination, how much defendant had paid for the subject property in 1948 "along with 900 other blocks" (here only three blocks or less having been taken). This evidence was manifestly illegal and counsel for defendant properly took one objectionable point that "there was no possible way of distinguishing between the value of this and the other property." Without considering the question of remoteness from the time of taking, it is clear that this evidence would have afforded the jury no more than a guess at what price this particular property bore with reference to the total purchase price of the many other blocks. A case somewhat in point is Lanquist v. City of Chicago, 200 Ill. 69, 65 N.E. 681, 682, where the court observed:

"Appellant's offer, taken in connection with the statement of his counsel made at the time, was objectionable upon three grounds: First, the time of the alleged purchase of the lots was in 1895, seven years before the present petition for condemnation was filed, and therefore was too remote; second, the purchase when made was of the two lots here in controversy, and of another lot adjoining them, numbered 36, and the purchase price was paid, so far as it was paid, for the three lots together, and, as there was some difference in the testimony as to the value of the lots, the total cost could not be apportioned to the different lots; * * *. When appellant acquired the three lots, 36, 37, and 38, he bought them for a total sum; and there can be no way of estimating, except by guesswork, how much of the purchase price was given for the two lots here in controversy, and for the third lot not here in controversy."

4(e). There was likewise no error in permitting witness Speake to give his estimate of the value of the lots on a front footage basis, even though he did not devalue the particular lots traversed by the ditch. He estimated the total front footage, then discounting the entire area because of the ditch, taking off the cost of draining it. He was shown to be an expert in real estate values and his opinion was entitled to go to the jury for what it was worth. Adler & Co. v. Pruitt, 169 Ala. 213(10), 53 So. 315, 32 L.R.A.,N.S., 889.

4(f). This assignment asserts error in refusal to exclude all of the testimony of Speake as to the value of the suit property and, of course, is untenable.

Assignments numbered 12 and 13 challenge the ruling of the court in permitting the defendant to introduce two deeds of recent sales of lots adjacent to the suit property, which stated the consideration of the purchase. These deeds might have been kept out of evidence by interposing the specific objection that the proper predicate for admissibility had not been laid by showing that the lots were substantially of the same nature and general character as the suit lots. But no such objection was made, appellant merely interposing the general objection. It has been the disposition of the court from our earliest cases not to place the trial court in error under such circumstances unless the proposed evidence is patently illegal and cannot be made relevant for any purpose. The case of Sanders v. Knox, 57 Ala. 80, 83-84, states the rule:

"* * * A general objection of this character cannot be sustained, unless the evidence is manifestly illegal and irrelevant, and apparently incapable of being rendered admissible in connection with other evidence. Such objections may mislead the party against whom they are taken, and the court, and lead to the practice of making objections in this court which if made in the primary court would have been obviated. * * *"

Had the specific objection been made so as to indicate to the court the vice of the inquiry, then a ruling would have been invited and the court doubtless would have sustained it unless the defendant should go further and prove the proper predicate.

We will finally consider assignments of error 3, 5, 6, 7, 8, 9 and 10, ar-

gued together, challenging the ruling of the trial court in denying the motion for a new trial. This opinion has treated of all of the grounds in the motion for new trial advanced as error except the ground alleging that the verdict and judgment were contrary to the great weight of the evidence. The governing rule is well understood. Unless after allowing all reasonable presumption of its correctness, the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust, there would be no warrant here for reversing the trial court in refusing to grant the motion. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

 And on this issue we have approved the principle that when the presiding judge refuses to grant a new trial, the favorable presumption attending the correctness of the verdict of the jury is thereby strengthened. Thornton v. City of Birmingham, supra, (18); Williams v. Saks, 236 Ala. 633, 185 So. 167.

 In the instant case we would certainly be at a loss to say with any degree of definiteness whether the verdict was excessive or against the great weight of the evidence. That the valuation fixed was a matter exclusively for the determination of the jury is conceded and the impartial mind could not with any degree of accuracy dispute the verdict returned. We have stated the varying views entertained by the witnesses with respect to value. The jury heard and saw these witnesses testify and fixed it between the high and the low valuation as given by the witnesses. Just which valuation was correct we cannot say, but we do know the jury, as well as the trial court, who also saw and heard the witnesses, was better advantaged than we to determine this serious question. In view of the aforestated presumptions, we cannot declare error in the ruling of the court in so denying a new trial.

It may be perhaps conceded that some of the evidence presented by both sides did go somewhat afield of the strict issue of valuation. But this is understandable in view of the particular facts of the case and the aggressiveness and astuteness of counsel representing the parties. The case was,

in the main, well tried and on a careful and impartial study of the record before us we are unable to say that appellant has shown error to reverse.

Affirmed.

LIVINGSTON, C. J., and BROWN, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON, J., dissents on the point with respect to the testimony of the Housing Authority's witness that the money was being furnished by the United States government.