COBB, Judge.
On June 15, 2004, Gary Houston was convicted of first-degree theft of property by deception, a violation of § 13A-8-2, Ala. Code 1975. On August 25, 2004, he was sentenced to five years’ imprisonment; that sentence was suspended, and he was placed on supervised probation for two years and ordered to pay restitution, court costs, and a victim’s compensation assessment. Houston filed a motion for a new trial which the trial court denied on November 5, 2004.[1]
The record reflects that Houston purchased a Ford 1100 lawn tractor at the online auction site “eBay” from Robert Brent Pepper for $2,400. According to Pepper, the auction listing contained a picture of the tractor, as well as details about the tractor. Pepper testified that Houston contacted him shortly after the auction ended and questioned him about specific details about the tractor. Pepper testified that v-shaped tires were customary for that type of tractor. According to Pepper, he advised Houston that the tires on the tractor were Goodyear brand Wrangler tires rather than “turf tires” as were listed in the description of the tractor on eBay; Pepper stated that he told Houston that it was common to place that type of tire on the size of tractor and that Houston “really didn’t say much about the tires.” (R. 39.) Pepper testified that although he indicated in the auction description that payment was required from the winning bidder within seven days of the close of the auction, Houston did not tender payment to Pepper within that time. Rather, according to Pepper, at Houston’s request, he agreed to allow Houston a few additional days to submit payment for the tractor, but Houston did not tender payment during that additional time. Pepper testified that he and Houston had some disagreements concerning the deal, but after further discussion, Houston agreed to tender a down payment of $1,000, which he paid via “Paypal,” an online electronic money transferring service. He then set up a meeting with Pepper at Pepper’s residence in Huntsville, for Houston to inspect and pick up the tractor and to tender the balance of the price for the tractor.
Pepper’s testimony further indicated that Houston traveled from his residence in North Carolina to Pepper’s residence on Saturday, May 10, 2003, inspected the tractor, paid the remaining balance of the purchase price, and took the tractor back to North Carolina. According to Pepper, he provided Houston with a detailed inspection of the tractor before the two of them loaded it onto Houston’s trailer. We note the following excerpt from Pepper’s testimony at trial:
“[Pepper]: Well, I — the first thing I did was I cranked the tractor up, raised and lowed [sic] the three-point hitch, which is where the equipment goes on. Popped the hood and let him look at the engine. I remember him saying something about the oil filter on it looked like it was the same oil filter that goes on a Mazda car of some sort.
“I showed him the tires, I said, As I told you on the phone,’ I said, ‘Here is the Goodyear tires it’s got on the back of the tractor. And just showed him that there were no leaks, the thing ran good and I drove it up on his trailer and helped him strap it down.”
*400 (R. 47.) Pepper further testified that Houston did not mention the tires at that time and that Houston did not voice any complaints about the tractor. According to Pepper, Houston tendered payment to Pepper at that meeting for the remaining balance of $1,400 by check. Pepper testified that he deposited the check two days later, on Monday May 12, and that he was notified on May 23 that a stop-payment order had been placed on the check by Houston; Pepper stated that his credit union informed him that the stop-payment order had been placed on Monday, May 12. According to Pepper, when he contacted Houston by telephone to ask him why he had stopped payment on the check, the following conversation occurred:
“I asked him why he had stopped payment on the check and he said, ‘You thought I was stupid. You misrepresented the tractor. I stopped payment on it.’ And I said, ‘Well, you didn’t say a word about it in the driveway.’ And he said, ‘Well, I knew you wouldn’t refund my deposit back so I knew this is what I had to do.’ ”
(R. 50-51.) Houston told him that the tires he had on the tractor interfered with the correct operation of the tractor.
Houston raises four issues on appeal: (1) whether the trial court lacked jurisdiction over Houston because he did not commit an act of fraud within Limestone County; (2) whether the criminal trial against him was improperly commenced for the unconstitutional purpose of collecting a civil debt; (3) whether the trial court erred by sustaining the State’s objection to evidence of Houston’s offer of settlement to the complaining witness; and (4) whether the State presented sufficient evidence to support the conviction.
I.
Houston claims that the Limestone Circuit Court lacked jurisdiction over this case because, he says, any deception on his part occurred in North Carolina when he put the stop-payment order on the check. Houston raised this contention both in a pretrial motion to dismiss the indictment and in his posttrial motion for a new trial and motion for a judgment of acquittal.
The Alabama Supreme Court has held the following with regard to jurisdiction over the crime of theft of property:
“ ‘The “subject matter” in the criminal setting is the crime itself. Therefore, if the crime is committed in this State, our courts have subject matter jurisdiction.
“ ‘If a crime is committed in this State, our courts also have jurisdiction over the person. Jurisdiction over property rarely arises in criminal matters, but a reasonable statement would be that, if property is illegally taken from this State or illegally brought into this State, our courts would have jurisdiction over this as well.’
“Rothchild v. State, 558 So.2d 981, 983 (Ala. Crim. App .1989).”
Ex parte James, 780 So.2d 693, 695 (Ala. 2000).
Houston claims that no intent to defraud took place within Limestone County. In order for Alabama courts to have jurisdiction of a crime of theft of property, an element of the charged offense must have taken place in Alabama. See, e.g., Ex parte James, supra; and Heath v. State, 536 So.2d 142 (Ala.Crim.App.1988). See also § 15-2-3, Ala.Code 1975.
Here, Pepper testified that Houston replied to his inquiry about why he stopped payment: “Well, I knew you wouldn’t refund my deposit back so I knew this is what I had to do.” (R. 50-51.) Pepper testified that Houston also replied: “ “You *401 thought I was stupid. You misrepresented the tractor. I stopped payment on it.’ ” (R. 50.) One inference that can be drawn from Pepper’s testimony is that Houston intended to stop payment on the check before he came to Limestone County to pick up the tractor, as evidenced by his failure to comply with the payment terms stated in the auction description or the payment terms later negotiated by the parties; another inference that can be drawn from Pepper’s testimony is that Houston formed the intent to take possession of the property but never to honor the check, i.e., that at the time he handed the $1,400 check to Pepper he intended to stop payment on the check. Therefore, the trial court did not err in denying Houston’s requests that the charge against him be dismissed for lack of jurisdiction.
II.
Houston next contends that the criminal prosecution was improperly commenced for the unconstitutional purpose of collecting a civil debt. According to § 13A-8-2, Ala.Code 1975:
“A person commits the crime of theft of property if he or she:
“(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property;
“(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property ...”
Although Art. I, § 20, Alabama Constitution 1901, prohibits the State from prosecuting a defendant for failure to pay a debt, the prosecution of a defendant for theft with intent to deprive the rightful owner of his property is not unconstitutional:
“The difference between the improper use of a statute as a means of punishment for debt and the proper use of a statute as a means of punishment for a criminal act is intent. Harris v. State, 378 So.2d 257 (Ala.Crim.App.), cert. denied, 378 So.2d 263 (Ala.1979). A mere failure or inability to pay a debt does not necessarily constitute theft. Theft requires the specific intention to deprive which cannot be inferred from the mere naked fact of nonpayment of a debt. Thus, the theft statute was designed to punish those who exert unauthorized control over the property of another with the intent to deprive that person of his property and not to punish persons who are unable to pay a debt.”
Bullen v. State, 518 So.2d 227, 233-34 (Ala. Crim.App.1987) (Emphasis original). As set forth more fully in the statement of facts herein and in Parts I and IV of this opinion, there was evidence that tended to indicate that Houston had the requisite intent to deprive Pepper of his property. Thus, we cannot say that the district attorney, being in the best position to assess the merits of proceeding with criminal charges, see Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907 (Ala.1992), abused his discretion in deciding to initiate criminal proceedings against Houston. Thus, we cannot say that the criminal prosecution in this case was initiated for the purpose of collecting a civil debt.
III.
Houston contends that the trial court erred in sustaining the State’s objections to evidence that, according to Houston, supported his theory that the case was a civil matter, rather than a criminal offense. Houston cites objections found at pages 56, 59, and 88 of the record.
A.
With regard to the first objection (R. 56), we note that Houston did not *402 argue that the testimony was for the purpose of showing that the case was a civil matter. Rather, defense counsel questioned whether the prosecutor was objecting to the defendant’s statement and then argued that settlement offers were admissible in criminal cases.
“[Defense counsel]: Okay. During [the time that Houston and Pepper were attempting to resolve their dispute], did Mr. Houston offer to you to just forget the whole deal and you refund him nine hundred bucks and that would be that?
“[Prosecutor]: The State objects, Judge.
“THE COURT: Do you want to respond?
“[Defense counsel]: Object to my client’s statement?
“[Prosecutor]: I believe any type of offer of settlement in a case, Judge, is inadmissible.
“[Defense counsel]: Not in a criminal case.
“THE COURT: Sustain the objection.”
(R. 55-56.)
At no time during that exchange did Houston argue that the testimony sought was for the purpose of showing that the case was a civil matter. Thus, as to that ruling, Houston failed to preserve the specific argument he now advances on appeal. “Review on appeal is limited to review of questions properly and timely raised at trial.” Newsome v. State, 570 So.2d 708, 716 (Ala.Crim.App.1989).
B.
Additionally, we note that the objections at page 56 and page 88 of the record centered around questions that called for testimony as to Houston’s alleged settlement offers.
“[Houston]:.... That’s when I told Mr. Pepper that his options were: he could give me back my money. I did expect—
“[Prosecutor]: Judge, I [am] going to object to [sic] based on my standing objection.
“THE COURT: Sustained.”
(R. 87-88.)[2] However, at the time those objections were made, Pepper had already testified, without objection, as to Houston’s settlement offer: “And I had two choices. I could give him back his thousand dollars, plus money for his trouble and I could come get the tractor, or I could buy him new tires and then he would give me the money.” (R. 51.) Further, Pepper had testified that he and Houston had attempted to use the online dispute resolution service provided by eBay to resolve their dispute. Additionally, shortly after the first objection, the following exchange occurred:
“[Defense counsel]: Okay. Now, as far as you know Mr. Houston was fine with you picking up the tractor and taking it from North Carolina to Alabama, and him getting his money back; isn’t that correct?
“[Pepper]: No, that’s not quite correct.
“[Defense counsel]: He wasn’t fine with you picking up the tractor and refunding him his money?
“[Prosecutor]: Judge, objection.
“[Pepper]: No. He wanted additional money. He said he wanted money for his trouble and gas coming down here.”
(R. 57-58.)
Consequently, although Houston’s arguments at trial were not on the same *403 grounds he now argues on appeal, and, further, even assuming that the testimony should have been allowed, Houston is not entitled to any relief as to these two excerpts because the testimony concerning Houston’s settlement offers was cumulative to other testimony in evidence.
C.
Unlike the other two exchanges, Houston did argue at page 59 of the record that the testimony was offered to explore whether the matter was civil or criminal in nature.
“[Defense counsel]: Did you ever state to him that you would drop the charges if he would pay the money that you wanted?
“[Prosecutor]: Judge, same objection.
“THE COURT: Sustained.
“[Defense counsel]: Your Honor, I’ll have to, at this point, object to the sustaining of the prosecutor’s objection.
“The issue here in this case is whether or not this is a civil matter. And I should have full opportunity to explore this.
“THE COURT: Sustain the objection.”
(R. 59.) However, we note that a trial court has wide discretion in determining the extent of questioning during cross-examination:
“ ‘It is a well-established rule in this state that the latitude and extent of cross-examination are matters which of necessity rest largely within the sound discretion of the trial court, and rulings with respect thereto will not be revised on appeal except in extreme cases of abuse. State v. Howington, 268 Ala. 574, 109 So.2d 676 (1959); Housing Authority of City of Decatur v. Decatur Land Co. [258 Ala. 607, 64 So.2d 594 (1953)]; Holland v. State, 424 So.2d 1387 (Ala.Cr.App.1982), cert. denied, 424 So.2d 1387 (Ala.1983).’ ”
Long v. State, 621 So.2d 383, 388 (Ala.Crim.App.l993)(quoting Beavers v. State, 565 So.2d 688, 689 (Ala.Crim.App. 1990)). We recognize that evidence of settlement offers may have been relevant for the purpose of showing that the matter arose in the context of a civil contract from which the jury could infer the lack of criminal intent, see, e.g., Bullen v. State, 518 So.2d 227 (Ala.Crim.App.1987) (trial court erred in excluding evidence from which the jury could have inferred that the appellant lacked the intent to steal from the victims). However, as is noted above, there was ample testimony at trial indicating that the transaction was conducted via the online auction Web site eBay; that Houston paid a portion of the purchase price via an electronic fund transfer; that Houston gave Pepper a check for the remaining balance when he took possession of the tractor; and that Houston stopped payment on the check two days later. There was also ample testimony indicating that Houston made some sort of settlement offers to Pepper and that the parties used a dispute resolution service offered by eBay to attempt to resolve the situation. Houston has offered no argument as what additional testimony he would have elicited, how any additional testimony would have been relevant, or how any additional testimony would have made a difference in his trial. Thus, even assuming that the evidence was admissible, error, if any, in the trial court’s sustaining of this objection was harmless.
Based on the foregoing, Houston is not entitled to any relief on this claim.
IV.
Finally, Houston argues that the State did not present sufficient evidence to *404 support the conviction. Specifically, Houston contends that the State did not establish that he had the intent to deceive Pepper in order to deprive Pepper of his property.
“The sufficiency of the evidence concerns the question of whether, ‘viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.’ ” Johnson v. State, 555 So.2d 818, 819 (Ala.Crim.App.1989), quoting Tibbs v. Florida, 457 U.S. 31, 37, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). ‘“In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), affd, 471 So.2d 493 (Ala.1985). “ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim. App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990).
In order for the State to prove a prima facie case for theft of property by deception, it had to show that Houston:
“(2) Knowingly obtained] by deception control over the property of another, with intent to deprive the owner of his or her property....”
§ 13A-8-2, Ala.Code 1975.
“ ‘To make a case of theft by deception, the state must prove three elements: (1) that the defendant knowingly obtained the property; (2) that the defendant obtained the •property by deception; and (3) that the defendant intended to deprive the owner of the property. Oliver v. State, 518 So.2d 707 (Ala.Cr. App.1987); Loper v. State, 469 So.2d 707 (Ala.Cr.App.1985).’ ”
Ex parte Rosborough, 909 So.2d 772, 775 (Ala.2004), quoting Ex parte Stinson, 631 So.2d 831, 832 (Ala.1992). A present intent is required in order to prove theft by deception:
“More than mere failure to perform a promise is required to support an inference of deceptive intent. Alabama Code 1975, § 13A-8-l(l)(f). A false promise must be distinguished from a broken promise.
“ ‘A false promise is to be distinguished from a broken promise, i.e., a promise which the promisor originally intends to keep but which he later decides to break. One who makes a false promise can be properly said to be guilty of fraud; but one who breaks a promise he meant to keep, though not altogether admirable, cannot properly be termed fraudulent.’ W. LaFave and A. Scott, Criminal Law 657, n. 17 (1972).
“Annot., 19 A.L.R.4th 959, 964 (1983).
“ ‘[A] present intent not to comply with a promise or a statement as to a future act can be the basis of the crime of obtaining money or property by false pretenses.’ In such prosecutions it is essential to establish that there was ‘an intent at the time the representation was made not to comply with a promise or statement as to a future act and to guard against the conviction of persons who have been guilty of no more than a breach of contract.’ 19 A.L.R.4th at 964.”
Benefield v. State, 469 So.2d 699, 701 (Ala. Crim.App.1985).
We recognize that in Smith v. State, 665 So.2d 1002, 1004 (Ala.Crim.App.1995), this *405 Court determined that there was no evidence in that case establishing the requisite intent to commit the criminal offense of theft and that “[a]n affirmance under the facts presented in this case would only-serve to cast prosecutors in the role of judgment collectors and encourage potential civil litigants to seek a remedy in a criminal court in the form of restitution.” Here, however, unlike in Smith, the State presented evidence from which the jury could infer that Houston intended to commit theft.
Pepper testified that he telephoned Houston after discovering that a stop-payment order had been issued on the check, that Houston complained at that time that Pepper had misrepresented the tractor, that he commented to Houston that Houston had not said anything about any problems in the driveway when they were loading the tractor, and that Houston told him, “ ‘Well, I knew you wouldn’t refund my deposit back so I knew this is what I had to do.’ ” (R. 50-51.) The jury could have reasonably inferred from this testimony that Houston, when he was taking delivery of the tractor in Alabama, exhibited the requisite intent to take control of the tractor without ever intending to honor the check for the balance of the purchase price. The jury could have reasonably inferred that Houston had a preexisting intent for the theft because he issued a check on which he could place a stop payment order. Pepper also testified that he and Pepper had agreed before Houston came to pick up the tractor that the $1,400 payment was to be made by certified check. Pepper testified that Houston did not give him a certified check when he arrived in Limestone County. Accordingly, there was sufficient evidence to submit the issue to the jury.
Further, to the extent that Houston’s argument challenges the weight of the evidence, any “inconsistencies and contradictions in the State’s evidence, as well as [any] conflict between the State’s evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact to be resolved by the jury.” Rowell v. State, 647 So.2d 67, 69-70 (Ala.Crim.App.1994). ‘““[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.” ’ ” Johnson v. State, 555 So.2d at 820, quoting Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App. 1987), quoting in turn Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). More importantly, “‘[t]he question of the victimf’s] credibility [is] one for the jury and not for this Court.’ ” Rowell, 647 So.2d at 69, quoting Coats v. State, 615 So.2d 1260, 1260 (Ala.Crim.App.1992). “We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.” Johnson, 555 So.2d at 820. “ ‘When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.’ ” Rowell, 647 So.2d at 69, quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982). Furthermore, ‘“[t]his Court must view the evidence in the light most favorable to the State, and “draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact.” ’ ” D.L. v. State, 625 So.2d 1201, 1204 (Ala.Crim.App.1993), quoting Woodberry v. State, 497 So.2d 587, 590 (Ala.Crim.App.1986). “Any issues regarding the weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.” Jones v. State, 719 So.2d 249, 255 (Ala. Crim.App.1996), aff'd, 719 So.2d 256 (Ala. 1998).
Here, the jury could have inferred from Pepper’s version of events that when Houston was in Alabama taking possession *406 of the tractor he knowingly took possession of the tractor, that he did so by deception, and that he intended to deprive Pepper of the tractor without paying Pepper the agreed-upon price. Pepper’s testimony alone, if believed, was sufficient to sustain Houston’s conviction. The jury obviously rejected Houston’s contention that he did not notice the problem with the tires until his return to North Carolina and his contention that he, at that time, decided to stop payment on the check because of what he considered to be a misrepresentation by Pepper. Thus, we decline to go behind that determination by the jury.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

. Contained in the record is the parties’ express consent to continue the motion for a new trial until November 5, 2004, a date beyond the 60-day period after which it would have otherwise been denied by operation of law.

. See III. A., of this opinion for the excerpt from the objection at R. 56.