The Dunes of GP, L.L.C. ("The Dunes"), appeals from the trial court's denial of its motion to compel arbitration of an action against it filed by Virginia Bradford. We affirm.
 Facts and Procedural History
In June 2004, Bradford entered into a preconstruction "purchase agreement" *Page 926 
with The Dunes to buy a condominium unit in a development in Gulf Shores known as The Dunes Condominiums. The purchase agreement contained the following arbitration provision:
 "Purchaser and Seller agree that all disputes between the parties which arise or remain unresolved after the closing shall be resolved by binding arbitration in accordance with Ala. Code Section 6-6-1, et seq., and the Resolution Resources Corporation Rules for Arbitration, as in effect on the date of the recordation of the Declaration. The decision of the arbitrator shall be final and the arbitrator shall have authority to award attorney's fees and allocate the costs of arbitration as part of any final award."
Bradford tendered $31,500 as an "initial earnest money deposit"; the earnest money was deposited with Gulf Shores Title Company, Inc. ("Gulf Shores Title").
For reasons unclear from the record, Bradford and The Dunes never closed on the transaction. Subsequently, both Bradford and The Dunes sought to obtain the $31,500 in earnest money deposited with Gulf Shores Title.
On December 12, 2005, Gulf Shores Title filed an action interpleading Bradford and The Dunes and seeking a judgment declaring which of them was the rightful owner of the $31,500. The Dunes answered and filed a cross-claim against Bradford, asserting that it was entitled to the $31,500. Bradford filed an answer, a cross-claim against The Dunes, and a third-party complaint against various parties, seeking specific performance of the purchase agreement and damages for breach of contract, fraud, civil conspiracy, and unjust enrichment.
On April 13, 2006, The Dunes filed a motion to compel Bradford to submit her claims against it to arbitration pursuant to the arbitration provision in the purchase agreement. Bradford filed a response, and the trial court held a hearing on the motion. On June 13, 2006, the trial court denied The Dunes' the motion. The Dunes appeals.
 Standard of Review "`[T]he standard of review of a trial court's ruling on a motion to compel arbitration at the instance of either party is a de novo
determination of whether the trial judge erred on a factual or legal issue to the substantial prejudice of the party seeking review.' Ex parte Roberson, 749 So.2d 441, 446 (Ala. 1999). Furthermore:
 "`A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question."'
 "Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (emphasis omitted))."
Vann v. First Cmty. Credit Corp., 834 So.2d 751,752-53 (Ala. 2002).
 Discussion
The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy *Page 927 
thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable. . . ."9 U.S.C. § 2. The FAA "mandates the arbitration of claims encompassed by an arbitration clause that is contained in a binding contract that involves interstate commerce." Ex parte ConferenceAmerica, Inc., 713 So.2d 953, 955 (Ala. 1998).
In support of its motion to compel arbitration, The Dunes submitted a copy of the purchase agreement, which contains the arbitration provision, along with various documentary evidence establishing that the transaction that formed the basis for the purchase agreement involved interstate commerce. Therefore, the burden then shifted to Bradford to produce evidence indicating that the arbitration agreement was not valid or that it did not apply to the dispute in question.
Bradford argues that the language of the arbitration provision limits its scope to either disputes that arise after the closing of the transaction or disputes that remain unresolved after the closing. Bradford testified in a affidavit opposing the motion to compel that because the parties never closed on the purchase of the condominium, the arbitration provision does not apply because the triggering event — the closing — never occurred. Bradford argues that she does not contest the validity of the arbitration provision; instead, she contends that by its language it simply does not apply to the dispute in question. The Dunes, on the other hand, argues that the arbitration provision covers disputes that arise before the closing.
 "`"Agreements to arbitrate are essentially creatures of contract," and ordinary contract rules govern the interpretation of arbitration provisions.' Orkin Exterminating Co. v. Larkin, 857 So.2d 97, 103
(Ala. 2003) (quoting Blount Int'l, Ltd. v. James River-Pennington, Inc., 618 So.2d 1344, 1346
(Ala. 1993)). `When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state.' Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000). Additionally, this Court will interpret the terms of a contract to give `effect to all terms used.' Sullivan, Long Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala. 1995). See also Board of Water Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co., 870 So.2d 699, 710 (Ala. 2003) ('The law is settled that this Court is bound to construe contracts so as to give meaning to all provisions whenever possible.').
 "The duty to arbitrate is a contractual obligation, and `a party cannot be required to arbitrate any dispute that he or she has not agreed to submit to arbitration.' [Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala. 1998)]."
Medical Servs., LLC v. GMW Co., [Ms. 1041753, December 15, 2006] ___ So.2d ___, ___ (Ala. 2006).
In interpreting an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem athand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr.Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765
(1983) (emphasis added). "Thus, a motion to compel arbitration should not be denied `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' UnitedSteelworkers of America v. Warrior Gulf NavigationCo., 363 U.S. 574, *Page 928 
582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)." Ex parteColquitt, 808 So.2d 1018, 1024 (Ala. 2001) (emphasis added).
The Dunes' argument is as follows:
 "While the mandatory binding arbitration clause in the present contract is not artfully drafted, the doubt regarding its scope must be construed in favor of arbitration. A practical interpretation of the arbitration provision is that the provision was meant to govern disputes arising both before and after the closing. Specific performance is an obvious claim likely to arise out of a contract for the sale of real estate. It is unlikely that a seller would agree to arbitration but exclude specific performance from arbitration."
The Dunes' brief at 6.
Other than this paragraph, The Dunes does not explain how the language of the arbitration provision requires this "practical interpretation." In any event, in construing a contract, this Court looks not for "a practical interpretation," but to the intention of the parties. "The intention of the parties controls in construing a written contract and the intention of the parties is to be derived from the contract itself, where the language is plain and unambiguous." Loerch v. National Bankof Commerce of Birmingham, 624 So.2d 552, 553 (Ala. 1993).
By its terms, the arbitration provision here is applicable to "all disputes between the parties which arise or remain unresolved after the closing." In order to accept The Dunes' argument that the arbitration provision covers the dispute in this case, we must interpret this phrase to mean that both (1) disputes that "arise" at any time and (2) disputes that "remain unresolved after closing" must be submitted to arbitration. Bradford, however, argues that the plain language of the provision indicates that it applies to (1) disputes that "arise" after closing and (2) disputes that "remain unresolved" after closing. In other words, Bradford would have the phrase "after closing" modify both the words "arise" and "remain unresolved."
Normally, doubt regarding the scope of an arbitration provision would require this Court to construe the provision in favor of arbitration. See Moses H. Cone Mem'l Hosp., supra;Colquitt, supra. However, in construing a contract, we must give effect and meaning to all its terms and provisions, whenever possible. Medical Servs., ___ So.2d at ___;Sullivan, Long Hagerty v. Southern Elec. GeneratingCo., 667 So.2d 722, 725 (Ala. 1995); and Board of Water Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co.,870 So.2d 699, 710 (Ala. 2003). To read the arbitration provision to apply to those disputes that "arise" and also to separate disputes that "remain unresolved after closing" would render the second description unnecessary. Specifically, if parties must arbitrate all disputes that "arise," then the parties must necessarily arbitrate disputes that "remain unresolved after closing" because such disputes have already arisen and are subject to arbitration. Thus, the phrase describing disputes that "remain unresolved" would be superfluous.
We must instead read the phrase to give all of its terms meaningful operation. Therefore, the phrase "after closing" must apply to or "modify" both disputes that arise afterclosing and disputes that remain unresolved afterclosing. This interpretation gives meaning to the all the terms in the arbitration provision.
The Dunes argues that paragraph 2.b. of the purchase agreement, which provides, in part, that the "holder" of the earnest money "shall disburse Earnest Money only as follows . . . upon order of a *Page 929 
court or arbitrator having jurisdiction over any dispute involving the Earnest Money . . .," indicates that the purchase agreement "contemplates" that an arbitrator would be involved in a dispute involving the earnest money. The Dunes raises this argument for the first time in its reply brief; therefore, it is not properly before us. See Byrd v. Lamar,846 So.2d 334, 341 (Ala. 2002) (noting the "settled rule that this Court does not address issues raised for the first time in a reply brief").
Because the closing has not taken place, the arbitration provision is not applicable to the dispute between the parties. Therefore, the trial court did not err in denying The Dunes' motion to compel arbitration.
AFFIRMED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.