[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 450 
This appeal and cross-appeal arise out of a civil action between two electric suppliers — Baldwin County Electric Membership Corporation ("Baldwin") and the City of Fairhope ("Fairhope"). Baldwin alleges that Fairhope is wrongly supplying electricity to premises Baldwin should be serving under the Service Territories for Electric Suppliers Act, § 37-14-30
et seq., Ala. Code 1975 ("the Act"), and seeks the prescribed statutory damages for Fairhope's alleged wrongful service to these premises. A jury returned a general verdict in favor of Fairhope, and Fairhope was awarded attorney fees, expenses, and costs totaling $295,945.27.
Baldwin appeals, arguing that the trial court erred by admitting certain evidence at trial and by refusing to give certain jury instructions Baldwin requested. In its cross-appeal, Fairhope argues that the trial court erred by denying Fairhope's motions for a judgment as a matter of law because, Fairhope alleges, Baldwin did not provide notice to Fairhope as required by the Act and because Baldwin's claims were untimely. We find no merit in Baldwin's appeal and therefore affirm the decision of the trial court, rendering moot Fairhope's cross-appeal, which we dismiss.
 Facts and Procedural History
Baldwin sued Fairhope on May 28, 1993, alleging that Fairhope was providing electricity to 43 customers in a service area that Baldwin, says was assigned to Baldwin under the Act. § 37-14-32, Ala. Code 1975.[1] *Page 451 
Baldwin sought both declaratory and injunctive relief, along with recovery of 25% of the gross revenues derived by Fairhope from its alleged wrongful delivery of electricity, as allowed by the Act. See § 37-14-37(b), Ala. Code 1975.[2]
Thirteen years later, Baldwin was granted leave to amend its complaint and add a 44th cause of action, which incorporated hundreds of additional alleged territorial violations by Fairhope that had occurred since the filing of the original complaint.[3] In response to Baldwin's original and amended complaints, Fairhope denied the allegations and counterclaimed, seeking declaratory and injunctive relief on the basis that the Act was unconstitutional as it applied to Fairhope. Fairhope alleged that the parties, before the Act became effective, had an oral contract in which Fairhope would supply electricity within the city limits of Fairhope, while Baldwin would supply electricity to customers in Baldwin County outside the municipality. Fairhope argued that the Act, by changing the territory Fairhope and Baldwin each served, unlawfully impaired the obligations of an existing contract in violation of Art. I, § 10, United States Constitution, [4] and §§ 22 and 95, Alabama Constitution of 1901.[5]
Before trial, Baldwin filed a motion in limine, asking the court to exclude "any evidence of an oral territory service agreement allegedly entered into by the parties prior to passage of [the Act]," and argued that, even if such an agreement existed, it *Page 452 
had been abrogated by the enactment of the Act. Similarly, Fairhope filed a motion in limine, seeking to exclude evidence of those claims Fairhope argued were time-barred. The trial court denied both motions. The action was tried by a jury, which rendered a general verdict in favor of Fairhope. As the prevailing party, Fairhope sought, and was awarded, attorney fees, costs, and expenses totaling $295,945.27. See
§ 87-14-37(b), Ala. Code 1975.[6] Baldwin now appeals from the judgment entered on the jury verdict and asks this Court to set aside the fee award. Fairhope cross-appeals, arguing that the trial court erred by denying its motions for a judgment as a matter of law because, it says, Baldwin failed to establish that its claims were timely or, alternatively, because, it says, Baldwin failed to prove that it had provided notice to Fairhope that Baldwin believed Fairhope was wrongly providing electric service to customers.
 Issues
On appeal, Baldwin argues (1) that the trial court committed reversible error by allowing Fairhope to present evidence of the existence of an oral service-territory agreement between Fairhope and Baldwin that Baldwin alleges was abrogated by the Act and that conflicts with the Act; (2) that the trial court erred by refusing to give Baldwin's requested jury instructions on the requirements that govern contracts entered into by municipalities, as established by § 11-47-6, Ala. Code 1975, [7] and by refusing to give an instruction informing the jury that Baldwin's board of trustees was required to approve all contracts entered into by Baldwin, as established in § 37-6-3(13), Ala. Code 1975;[8] and (3) that the trial court's errors warrant a reversal and that the fees awarded to Fairhope should be set aside. Fairhope cross-appeals on the grounds that the trial court should have granted either or both of Fairhope's motions for a judgment as a matter of law because, it alleges, Baldwin's claims are untimely and Baldwin cannot prove every element of its claim.
 Analysis I. Evidentiary Issue
At trial, Fairhope was permitted to present evidence of an alleged oral service-territory *Page 453 
agreement between the parties. Baldwin argues that allowing such evidence was reversible error because, it argues, such an agreement is invalid under the Act, the alleged agreement was not in writing or approved by Baldwin's board of trustees as required by law, and the agreement lacked sufficient certainty to be enforceable. Fairhope argues, however, that this issue was not preserved for appeal.
 A. Standard of Review
Two fundamental principles govern the standard by which this Court reviews a trial court's rulings on the admission of evidence. Middleton v. Lightfoot, 885 So.2d 111, 113
(Ala. 2003). "`"The first grants trial judges wide discretion to exclude or admit evidence."`" 885 So.2d at 113 (quoting Mockv. Allen, 783 So.2d 828, 835 (Ala. 2000), quoting in turnWal-Mart Stores, Inc. v. Thompson, 726 So.2d 651, 655
(Ala. 1998)). However, "a trial court exceeds its discretion where it admits prejudicial evidence that has noprobative value." 885 So.2d at 113 (citing Powell v.State, 796 So.2d 404, 419 (Ala.Crim.App. 1999), aff'd,796 So.2d 434 (Ala. 2001)).
"`"The second principle `is that a judgment cannot be reversed on appeal for an error [in the improper admission of evidence] unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties.'"`" Middleton, 885 So.2d at 113 (quotingMock, 783 So.2d at 835, quoting in turn Wal-MartStores, 726 So.2d at 655). See also Rule 45, Ala. R.App. P. `"The burden of establishing that an erroneous ruling was prejudicial is on the appellant.'" Middleton,885 So.2d at 113-14 (quoting Preferred Risk Mut. Ins. Co. v.Ryan, 589 So.2d 165, 167 (Ala. 1991)).
 B. Baldwin's Motion in Limine
Before trial, Baldwin moved the trial court to "preclud[e] the parties from making any reference to or submitting any evidence concerning the oral service territory agreement which Fairhope contends that it entered into with [Baldwin]." Baldwin argues on appeal that the trial court committed reversible error by allowing Fairhope to present evidence of the alleged oral service-territory agreement between the parties.[9] Fairhope argues that *Page 454 
Baldwin's motion in limine, seeking to exclude any evidence of the alleged oral service-territory agreement, was insufficient to preserve the issue for appeal and that Baldwin's objection to that evidence at trial, which was necessary to perfect Baldwin's appeal on this issue, was untimely. Fairhope further argues that even if the trial court did err by admitting the evidence, Baldwin cannot demonstrate that it was prejudiced by the trial court's ruling. We agree.
A motion in limine seeking to exclude evidence, which is denied by the trial court, is, "unless the court clearly indicates to the contrary, the legal equivalent of an announcement by the court that it reserves the right to rule on the subject evidence when it is offered and is not a final ruling made in a pre-trial context." Owens-Corning Fiberglass Corp. v. James,646 So.2d 669, 673 (Ala. 1994) (citing Baxter v. Surgical Clinicof Anniston, P.A., 495 So.2d 652 (Ala. 1986)). This Court inOwens-Corning continued, stating as follows:
 "An appellant who suffers an adverse ruling on a motion to exclude evidence, made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence and assigns specific grounds therefor at the time of the trial, unless he has obtained the express acquiescence of the trial court that subsequent objection to evidence when it is proffered at trial and assignment of grounds therefor are not necessary."
646 So.2d at 669 (citing Liberty Nat'l Life Ins. Co. v.Beasley, 466 So.2d 935 (Ala. 1985)).
Baldwin argues that the trial court's denial of its motion in limine was "unequivocal . . . absolute and unconditional" and that an objection was therefore unnecessary. Baldwin's reply brief at 5. In support of this argument, Baldwin quotes the trial court as saying that "[t]he issue that I think needs to be presented to the jury is, is there a contract, or is there not a contract between the parties. After that it seems to me all of this is just details." Baldwin's reply brief at 6. Although the trial court did make this statement, it was not made in reference to Baldwin's motion in limine.[10] The trial court denied Baldwin's motion in limine, saying: "I am going to deny the motion in limine as to the oral agreement. I think we have got some other matters." Although the record certainly supports an argument that the trial court made statements indicating that it believed that the oral-agreement issue was dispositive, the record does not reflect that the trial court "clearly indicated" that further objections to the admission of evidence of the oral service-territory agreement *Page 455 
were unnecessary or that Baldwin obtained the "express acquiescence" of the trial court that subsequent objections to such evidence were not required. Liberty National,466 So.2d at 936. Therefore, Baldwin's motion in limine was insufficient to preserve this issue for appeal.
Because Baldwin's motion in limine was insufficient to preserve for appeal the question of the admissibility of evidence of the oral service-territory agreement, we are left to address whether Baldwin took the appropriate steps during trial to pre-serve the issue for appeal. For Baldwin to preserve error, it had to make "a timely objection . . ., stating the specific ground of objection, if the specific ground was not apparent from the context." Rule 103, Ala. R. Evid. See also Ex parteWilliamson, 907 So.2d 407, 416 (Ala. 2004) ("`"It is a generally accepted principle, as set forth in the Alabama Rules of Evidence, that a party against whom inadmissible evidence is offered must make a formal, specific objection." [2] Charles W. Gamble, McElroy's Alabama Evidence § 426.01(1) (5th ed. 1996) (citing Rule 103(a), Ala. R. Evid.). The objection must also be timely. See Rule 103(a), Ala.R.Evid.;General Motors Corp. v. Johnston, 592 So.2d 1054,1057-58 (Ala. 1992).'" (quoting Radford v. State,783 So.2d 13, 15 (Ala. 2000))). In order for Baldwin's objection to have been timely, it has to have been "`raised at the point during trial when the offering of improper evidence is clear.'"HealthTrust, Inc. v. Cantrell, 689 So.2d 822, 827
(Ala. 1997) (quoting Charles W. Gamble, McElroy's AlabamaEvidence § 426.01(3) (5th ed. 1996)).
Baldwin argues that it made a timely objection when the evidence was introduced. Baldwin's reply brief at 6. Fair-hope, on the other hand, argues that Baldwin failed to object in a timely manner.
Fairhope's brief at 40. The record supports Fairhope's argument.
During Fairhope's cross-examination of Baldwin's first witness, John Larson, at one time a supervisor of engineering and engineering services for Baldwin, the following colloquy occurred, without objection:
 "Q. Now, you had a number of discussions, did you not, over the years with Mr. Aaron Norris [of the City of Fair-hope] here concerning electric territories and who was going to serve particular subdivisions and who was going to serve particular customers, as they came up, did you not?
 "A. We have had multiple conversations, yes.
 "Q. And Mr. Norris in those multiple conversations on this subject told you consistently, did he not, that the city of Fairhope was going to serve subdivisions and customers within its city limits, based on an agreement that had been entered into between Baldwin EMC and Fairhope, correct?
 "A. I've heard Mr. Norris mention that there was an agreement, but, as far as us discussing an agreement, no, I've never discussed an agreement with Mr. Norris.
 "Q. But he told you on these occasions that they were going to serve these customers based on this agreement, did he not?
 "A. He said he was going to serve this subdivision because it was in the city limits.
 "Q. Because there was an agreement that they could serve in the city limits? "A. I don't know if that was in every conversation or not.
 "Q. He told you that on at least some of the occasions, did he not?
 "A. He has mentioned that to me. *Page 456 
 "Q. You never objected to that, did you?
 "A. No, because I do not know of any agreement.
 "Q. You never denied the existence of an agreement to him, did you?
 "A. No, because I didn't discuss it with him.
 ". . . .
 "Q. In fact, the City of Fairhope sent [Baldwin] a letter which said that under our agreement we have no intent to serve any customers off of this line outside the city limits, didn't they?
 "A. I don't know if it was mentioned in there of any agreement. But it just said that they did not plan to serve any of our customers. But I don't believe there was any mention of an agreement in that letter."
On redirect, Baldwin's counsel had the following exchange with Larson:
 "Q. Let me see if this is a fair statement. Did Mr. Norris ever at any point in time dispute the fact that if you go by the closer-to rules, the territory, the premises that we are arguing about, are in [Baldwin's] service territory? Did he ever dispute that?
 "A. Not that I remember.
 "Q. What Mr. Norris said was that he felt like the City had a right to serve it under some preexisting oral agreement?
 "A. That's what I understand. That's correct.
 "Q. If it's in the city limits, the City can serve it, regardless of what [the Act] said?
 "A. That's correct.
 "Q. Did he ever produce for you any sort of agreement to that effect?
 "A. No, he did not.
 "Q. Have you ever seen any acknowledgment of an agreement to that effect in [Baldwin's] files?
 "A. No, I have not."
From these exchanges it is clear that Baldwin not only failed to object to the introduction of evidence concerning the oral agreement, but also elicited evidence concerning it. It does not appear that Baldwin objected to Fairhope's admission of evidence concerning the alleged oral agreement until Fairhope's direct examination of Jim Nix, a former mayor of Fairhope, in which the following occurred:
 "Q. Was there ever any concern expressed to you by Baldwin about the fact that City of Fairhope might be going outside its city limits to pick up electric customers?
 "A. Well, they didn't like it.
 "Q. Didn't like it. Was there anything said to you about that by anybody from Baldwin EMC?
 "A. Yes. Don Sutherland, he was the manager at the time. He talked to me. That's when we worked out an agreement with him.
 "[BALDWIN'S COUNSEL]: We object to any testimony concerning the agreement for the reasons we argued to Your Honor this morning.
 "THE COURT: Overruled.
 "[BALDWIN'S COUNSEL]: We ask that we be given a standing objection so that we don't need to repeatedly object. "THE COURT: You have your objection."
Baldwin argues, without citing any authority, that "it was unnecessary for [Baldwin] to object to this testimony during Fair-hope's cross-examination of [Baldwin]'s witness (Larson) because his brief testimony was not substantive evidence that the parties had entered into an agreement nor did it address in any way the contents of *Page 457 
the claimed agreement." Baldwin's reply brief at 7. Baldwin's argument is unpersuasive. Larson's testimony, as quoted above, appears, in fact, to be substantive evidence as to the existence of the alleged oral agreement and, in some measure, the substance of it. This was the exact type of evidence Baldwin sought to exclude with its motion in limine. See
Baldwin's motion in limine ("[Baldwin] seeks the issuance of an order precluding the parties from making any reference
to or submitting any evidence concerning the oral service territory agreement which Fairhope contends that it entered into with [Baldwin]." (emphasis added)).
It is clear from the second question that Fairhope asked during its cross-examination of Larson that Fairhope was attempting to introduce the testimony Baldwin alleged was improper. Baldwin was required to object at that time, and it did not.HealthTrust, 689 So.2d at 827. It was not until the third witness of the day, who was the second witness to give testimony regarding the alleged oral agreement, testified that Baldwin objected. Therefore, Baldwin failed to timely object to the introduction of the evidence of the alleged oral agreement, and Baldwin's failure to timely object to this evidence, alone, is sufficient to preclude appellate review of this issue.[11]See Davis v. Southland Corp., 465 So.2d 397, 402
(Ala. 1985) ("Timely objection is a condition precedent to raising an error on appeal. Where a timely objection to the admission of evidence is not made, the party wishing to exclude the evidence cannot be heard to complain." (citing Sanfordv. Sanford, 355 So.2d 365 (Ala. 1978))). See alsoAlabama Power Co. v. Henderson, 342 So.2d 323, 327 (Ala. 1976) ("Since there was no timely objection by counsel, there is no error for this court to review." (citing Prescott v.Martin, 331 So.2d 240 (Ala. 1976); Johnson v.State, 272 Ala. 633, 133 So.2d 53 (1961); and Andersonv. State, 209 Ala. 36, 95 So. 171 (1922))).
The earlier recited testimony of Larson also supports Fairhope's second argument that Baldwin cannot allege prejudice, even if the trial court's ruling on the evidence was erroneous. Baldwin, by eliciting testimony about the oral service-territory agreement on redirect examination and by failing to object to Fairhope's cross-examination of Larson, cannot now claim to have been prejudiced by similar evidence later admitted over its objection. See B M Homes, Inc. v. Hogan,376 So.2d 667, 673 (Ala. 1979) ("Even if it be conceded the testimony was inadmissible, . . . we find its admission was harmless error because other testimony of the same substance had previously been admitted without objection or motion to exclude. In Alabama the rule is that prejudicial error *Page 458 
may not be predicated upon the admission of evidence which has been admitted at some other stage of the trial without objection or motion to exclude." (citing Coker v. Ryder TruckLines, 287 Ala. 150, 249 So.2d 810 (1971); Turner v.Blanton, 277 Ala. 536, 173 So.2d 80 (1965); andLoftin's Rent-All, Inc. v. Universal Petroleum,344 So.2d 781 (Ala.Civ.App. 1977))). See also Hall v. Polk,363 So.2d 300, 303 (Ala. 1978) ("Even if the admission of a hearsay statement is technical error, the error is rendered harmless by other evidence to the same effect received without objection."); Chrisman v. Brooks, 291 Ala. 237, 242,279 So.2d 500, 505 (1973) ("Prejudicial error may not be predicated upon admission of evidence which has been admitted without objection or motion to exclude at some other stage of the trial."). If Baldwin cannot assert prejudice, the error, if any, is harmless, and Baldwin's argument that the trial court's judgment should be reversed is without merit. Rule 103(a)(1), Ala. R. Evid. See also, Rule 45, Ala. R.App. P. ("No judgment may be reversed or set aside, nor new trial granted . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.").
Finally, even assuming that Baldwin could allege that it was prejudiced by the admission of the evidence, it does not appear that Baldwin has effectively made that argument.[12] The burden is on Baldwin to do so. See Middleton,885 So.2d at 113-14 ("`The burden of establishing that an erroneous ruling Was prejudicial is on the appellant.'" (quotingPreferred Risk, 589 So.2d at 167 (citations omitted))). First, the word "prejudice" appears only once in Baldwin's brief, and that is in connection with Baldwin's second argument. Baldwin's brief at 38. Second, Baldwin's only allegation of prejudice on this issue is its naked assertion that "[t]he effect of the [trial court's] ruling was to permit the jury to return a verdict sanctioning an arrangement which violated the law." Baldwin's brief at 23. However, Baldwin later acknowledges in its reply brief that "[t]his Court can draw no conclusion as to the basis for the jury's determination since only a general verdict was returned." Baldwin's reply brief at 16. Therefore, Baldwin has not met its burden of proving prejudice.
Because Baldwin has not preserved for appellate review its objection to the testimony regarding the existence of an oral agreement and because Baldwin has not, and, in fact, cannot, demonstrate that it was prejudiced by the trial court's evidentiary ruling, we affirm the judgment of the, trial court on this issue.
 II. Jury-Instruction Issue
Baldwin argues that the trial court committed reversible error when it refused to give Baldwin's requested jury instruction on the statutory requirements that govern contracts entered into by municipalities, as well as a requested jury instruction on the statutory requirements that govern the contracts into which Bald *Page 459 
win enters. Fairhope argues that the trial court did not err because, it argues, Baldwin's requested jury instructions went to an affirmative defense that was not pleaded.
 A. Standard of Review
"`"[A]n incorrect or misleading charge may be the basis for the granting of a new trial."'" George H. Lanier Mem'l Hosp. v.Andrews, 809 So.2d 802, 806 (Ala. 2001) (quoting King v.W.A. Brown Sons, Inc., 585 So.2d 10, 12 (Ala. 1991) (citation omitted)). "When an objection to a jury charge has been properly preserved for review on appeal, . . . we ` "look, to the entirety of the [jury] charge to see if there was reversible error,"` and reversal is warranted only if the error is prejudicial." George H. Lanier Mem'l Hosp.,809 So.2d at 807 (quoting King, 585 So.2d at 12).[13]
 B. Statutory Requirements for Contracts Entered into by Municipalities and by Baldwin
On the last day of trial, Baldwin moved the trial court "to exclude all of the testimony from all witnesses on the issue of the alleged oral agreement between Fairhope and Baldwin" and electronically filed an "Answer to Counterclaim," in which Baldwin asserted three "Affirmative Defenses" to Fairhope's claim that an oral service-territory agreement existed between the parties. The basis of both Baldwin's motion and its answer was, according to Baldwin, that all evidence of the alleged oral agreement should be excluded and that Fairhope's oral-agreement claims were barred because contracts entered into by municipalities, such as Fairhope, must be in writing, as required by § 11-47-5, Ala. Code 1975, [14] and that according to § 37-6-3(13), Ala. Code 1975, contracts entered into by Baldwin must be approved by its board of trustees.[15]
The trial court denied *Page 460 
Baldwin's motion. Baldwin subsequently submitted requested jury instructions that contained, verbatim, the language of the statutes on which Baldwin's argument relies; the trial court refused to give those instructions.[16]
Baldwin now argues that it was prejudicial error for the trial court to refuse to give Baldwin's requested jury instructions on those statutes. Baldwin contends that the jury should have been instructed that "Alabama law mandates that contracts of municipalities be in writing, executed by the proper city official and by the other contracting party, and that Alabama law also addresses the role of [Baldwin]'s Board of Trustees in approving contracts to which [Baldwin] is a party." Baldwin's brief at 37. Baldwin argues that this error was further compounded by an instruction that the trial court did give, which stated that "there is no rule of law that all contracts must be in writing." Baldwin's brief at 37.
Fairhope argues, however, that "Bald-win's failure to even mention its defenses based on these statutes prior to the last day of trial justified the trial court's refusal of the proposed jury charges." Fairhope's brief at 61. Relying on Rule 8(c), Ala. R. Civ. P., [17] Fairhope contends that Baldwin's jury charges "related to two unpleaded affirmative defenses to the counterclaim asserted by Fairhope. These defenses should have been raised in a responsive pleading before trial, not in a motion to strike in the middle of trial and in jury charges offered at the end of trial." Fairhope's brief at 62. Fairhope argues that Baldwin waived these defenses by failing to appropriately and timely plead them in its answer to Fairhope's counterclaim. Fairhope's brief at 62. We agree.
"The rule is that a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by the proper instructions." Alabama Farm Bureau Mut. Ins.Serv., Inc. v. Jericho Plantation, Inc., 481 So.2d 343, 344
(Ala. 1985) (citing State Farm Mut. Auto. Ins. Co. v.Dodd, 276 Ala. 410, 162 So.2d 621 (1964)). Baldwin argues, without citation to authority, that it "had no obligation to plead in its Complaint the statutes which require city contracts to be in writing. This was an evidentiary issue." Baldwin's reply brief at 12. First, these claims appear substantive, rather than evidentiary, because they go directly to the existence and validity of the alleged oral agreement. Moreover, the three claims appear, in fact, to be affirmative defenses.See Lloyd Noland Found, Inc. v. Health-South Corp.,979 So.2d 784 (Ala. 2007) ("An affirmative defense is `[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiffs or prosecution's claim, even if all the allegations in the complaint are true.'" (quoting Black'sLaw Dictionary 451 (8th ed. 2004))). See also Rule 8(c), Ala. R. Civ. P. ("In pleading to a *Page 461 
preceding pleading, a party shall set forth affirmatively . . . statute of frauds . . . and any other matter constituting an avoidance or affirmative defense."). Certainly, all three of the claimed defenses — the Statute of Frauds; § 11-47-6, Ala. Code 1975; and § 37-6-3(13), Ala. Code 1975 — would defeat Fairhope's claim that the Act unconstitutionally impaired the contract between the parties because these statutes frustrate Fairhope's claim of the existence or validity of the alleged oral service-territory agreement.
The record supports Fairhope's claim that Baldwin did not answer Fairhope's counterclaim or address either of these statutes or defenses until the last day of the trial, which was 13 years after the original pleadings and 3 years after Fair-hope last asserted its counterclaims. Baldwin's answer, which was filed without leave of court, was untimely.See Rule 12(a), Ala. R. Civ. P. ("A party served with a pleading stating a cross-claim against that party shall serve an answer thereto within thirty (30) days after the service upon that party. The plaintiff shall serve a reply to a counterclaim in the answer within thirty (30) days after service of the answer or, if a reply is ordered by the court, within thirty (30) days after service of the order, unless the order otherwise directs."); Rule 15, Ala. R. Civ. P. ("Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.").
Therefore, Baldwin's affirmative defenses, asserted in its untimely pleading, are waived. Rule 8(c), Ala. R. Civ. P.See also McCrary v. Butler, 540 So.2d 736, 740
(Ala. 1989) ("Failure to affirmatively set forth a defense required to be affirmatively pleaded constitutes a waiver of the defense." (citing Hayes v. Payne, 523 So.2d 333
(Ala. 1987))).[18]
Because Baldwin's claims were not properly before the trial court, the trial court did not err by refusing to give the two instructions Baldwin requested on Bald-win's untimely defenses.[19] *Page 462 
 Conclusion
Because we hold that the trial court did not commit reversible error with regard to admitting evidence of the oral service-territory agreement between the parties or refusing to give Baldwin's requested jury instructions, we affirm the decision of the trial court. Because we affirm the decision of the trial court, we need not address Baldwin's request to set aside the fee award. Fairhope's cross-appeal regarding the trial court's alleged error in refusing to grant Fairhope's request for a judgment as a matter of law is rendered moot by our decision on Baldwin's appeal.
1060475 — AFFIRMED
1060545 — APPEAL DISMISSED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The relevant portion of § 37-14-32 states: "Except as otherwise provided . . . in areas outside existing municipal limits (including areas annexed to municipalities on or after April 26, 1984), no electric supplier shall construct or maintain electric distribution lines for the provision of retail electric service to any premises being provided retail electric service by another electric supplier, or to any new premises located within the boundaries of assigned service areas of another electric supplier. Assigned service areas outside existing municipal limits are hereby established as set forth in this
section. "(1) . . . [E]ach electric supplier is hereby granted a legislative franchise and assigned the sole obligation, in areas out side existing municipal limits and within existing municipal limits to the extent the standards of this section are made applicable by subdivision (a)(5) of Section 37-14-33, for provision of retail electric service to all new premises located in closer proximity to existing distribution lines of such supplier than the nearest existing distribution lines of any other electric supplier (including areas annexed to municipalities on or after April 26, 1984 whether or not a municipal franchise has been granted to the electric supplier to whom an area annexed has been assigned or to any other electric supplier). . . . Thus, the assigned service area of each electric supplier in areas outside existing municipal limits is defined as the area or areas consisting of a line or lines drawn equidistant between the existing distribution lines of such electric supplier and the nearest existing distribution line of any other electric supplier. Where a premises is located in the assigned service area of two electric suppliers, the supplier in whose assigned area the majority of the square footage of the premises falls shall provide the service."
See also Alabama Power Co. v. Citizens of Alabama,740 So.2d 371 (Ala. 1999) (providing a historical background of the Act).
[2] The relevant portion of § 37-14-37(b) provides:
 "(b) If an electric supplier believes that another electric supplier has already rendered or extended electric service at retail to a premise which was designated to be served by the aggrieved electric supplier, the aggrieved electric supplier shall give notice in writing to the offending electric supplier of the potential violation of this article. The offending electric supplier shall have 45 days to determine whether it is in violation of this article. . . . If the offending electric supplier does not cease rendering service and remove its distribution facilities within the 45 day period or within such longer period designated by the aggrieved electric supplier, the aggrieved electric supplier may file suit . . . to enjoin the offending electric supplier from continuing such rendition or extension and for damages. If a violation of this article is proved, the offending electric supplier shall (1) remove its facilities constructed for the rendition of retail electric service to the premises at the time and upon the schedule designated in writing by the aggrieved electric supplier; and (2) pay to the aggrieved electric supplier 25 percent of the gross revenues derived by the offending electric supplier from the sale of electric service in violation of this article from and after the date that is 45 days after the date on which the notice of violation was given."
[3] It appears that this delay was caused, in part, by both parties awaiting decisions on the constitutionality of the Act.See Municipal Utilities Bd. v. Alabama Power Co.,934 F.2d 1493 (11th Cir. 1991); Alabama Power Co. v. Citizens ofAlabama, 740 So.2d 371 (Ala. 1999).
[4] "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." U.S. Const. art 1, § 10.
[5] "That no . . . law . . . impairing the obligations of contracts . . . shall be passed by the legislature "§ 22, Ala. Const. 1901. "There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement. . . ." § 95, Ala. Const. 1901.
[6] The remainder of § 37-14-37(b) states:
 "In addition [if the aggrieved electric supplier is successful], the offending electric supplier shall reimburse the aggrieved electric supplier for all witness fees, court costs, reasonable attorney fees and other expenses incurred in any litigation to enforce the aggrieved electric supplier's rights under this article. If the violation is not proved, the aggrieved electric supplier shall reimburse the offending electric supplier for all witness fees, court costs, reasonable attorneys fees and other costs incurred in the litigation. All actions or proceedings for injunction or for damages shall be brought within three years after the offending electric supplier first renders or extends electric service at retail in violation of this article."
[7] The applicable portion of § 11-47-5 states:
 "Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds and interest coupons, shall be attested by the clerk."
[8] The relevant portion of § 37-6-3(13) states:
 "A cooperative shall have the power:
 ". . . .
 "(13) To make any and all contracts necessary or convenient for the full purpose of the powers in this chapter granted . . . and in connection with any such contract to stipulate and agree to such covenants, terms and conditions as the board of trustees may deem appropriate. . . ."
[9] Baldwin makes four arguments in support of its position. First Baldwin argues that a service-territory agreement between electric suppliers is valid only if that agreement is adopted by the legislature, citing § 37-14-36, Ala. Code 1975 ("Subsequent to May 20, 1985, suppliers shall be permitted to enter into mutual agreements . . . provided, however, that no subsequent agreement shall be valid unless and until it has been reviewed by the legislature and the legislature has amended this section to mandate the implementation of the provisions of such agreement.").
Baldwin's second argument is that the alleged agreement was rendered void and unenforceable upon the passage of Act because the agreement contained territorial-assignment rules that were contrary to those established in the Act. Baldwin's brief at 30-31. Put another way, Baldwin argues that the alleged agreement was in derogation of the Act and was, therefore, void and unenforceable, citing Marx v. Lining, 231 Ala. 445,448, 165 So. 207, 209-10 (1935) ("It is established by a long line of decisions of this court that contracts specifically prohibited by law, or the enforcement of which violates the law, or the making of which violates the laws which were enacted for regulation and protection, as distinguished from a law created solely for revenue purposes, are void and unenforceable."). Baldwin's brief at 30.
Third, Baldwin argues that it was reversible error for the trial court to admit evidence of the alleged oral agreement because the agreement was not in writing, as required by § 11-47-5, Ala. Code 1975 ("Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting."), and was not approved by Baldwin's board of trustees, as required by § 37-6-3(13), Ala. Code 1975 ("A cooperative shall have the power: . . . (13) To make any and all contracts necessary or convenient . . . and agree to such covenants, terms and conditions as the board of trustees may deem appropriate. . . ."). Baldwin's brief at 34.
Finally, Baldwin asserts that evidence of the alleged oral service-territory agreement should not have been admitted because, it argues, the alleged agreement lacked sufficient certainty to be enforceable. Baldwin's brief at 38.
[10] The record indicates that the trial court's statement, as quoted by Baldwin in support of its argument, was made as part of a discussion between the trial court and Fairhope's counsel. The discussion relates to Fairhope's motion in limine, in which Fairhope alleges that a large portion of Baldwin's claims were untimely pleaded and therefore time-barred. The trial court, in the passage quoted by Baldwin, appears to be discussing whether the trial court could wait to address the timeliness of Baldwin's claims until after the jury determined whether there was an oral service-territory agreement.
[11] Baldwin's objection also appears untimely because it was made after the witness, Jim Nix, answered Fairhope's question.See Housing Auth. of Decatur v. Decatur Land Co.,258 Ala. 607, 612, 64 So.2d 594, 597 (1953) ("At the outset it is well to take notice of the recognized rule that timely objection to a question is necessary and the point is not preserved if the objector speculates on the answer and waits until after the answer to reserve an exception to the ruling."); Allison v.Owens, 248 Ala. 412, 415, 27 So.2d 785, 787 (1946) ("An objection not made until after a responsive answer by the witness comes too late for the defendant to be entitled to review of the matter here."). If Baldwin was unable to object before the witness answered, a motion to strike or to exclude the question and answer should have accompanied its belated objection. Crowne Invs., Inc. v. Reid, 740 So.2d 400,408 (Ala. 1999) ("If the witness's answer came too quickly for Crowne to object, then Crowne's proper remedy would have been to make the belated objection and to make a companion motion to strike or exclude the question and answer, "(citing Green v.Standard Fire Ins. Co. of Alabama, 398 So.2d 671 (Ala. 1981))).
[12] Baldwin appears to briefly address this argument for the first time in its reply brief. It concludes, without any citation to authority or further analysis, that "[m]ost certainly, [the] allowance of evidence of an agreement which violated the laws of Alabama injuriously affected substantial rights of [Baldwin]." Baldwin's reply brief at 17. Arguments made for the first time in a reply brief are not properly before this Court. See The Dunes of GP, L.L.C. v. Bradford,966 So.2d 924, 929 (Ala. 2007) (stating the "setded rule that this Court does not address issues raised for the first time in a reply brief" (citing Byrd v. Lamar, 846 So.2d 334,341 (Ala. 2002))).
[13] The record reflects that Baldwin's objection to the trial court's failure to give its requested jury instructions took the following form:
 "We respectfully except to Your Honor's refusal to give the two additional charges that were presented earlier today. The first charge, it's not numbered, but it is the charge that states that contracts entered into by municipalities shall be in writing, signed and executed in the name of the proper officer. It's quoted from section 11-47-5 of the [Alabama] Code [1975],
 ". . . .
 "The other charge is a similar charge that relates to contracts executed by Coops, and it is a quotation from § 37-6-313 of the [Alabama] Code [1975]."
It appears that Baldwin's objection is insufficient to preserve this issue for appeal. See Burnett v. Martin,405 So.2d 23, 28 (Ala. 1981) ("[T]he objection must be made specifically and must be supported by grounds in order for review to be had in the appellate court."); Alabama Dep't ofTransp. v. Land Energy, Ltd., 886 So.2d 787, 796 (Ala. 2004) ("A general objection to the giving of, or the refusal to give, a jury instruction, not accompanied by an adequate explanation of the thrust of the ground, is insufficient to preserve any error associated with the giving, or refusal, of the charge." (citing Vaughan v. Oliver, 822 So.2d 1163 (Ala. 2001);Waites v. Malone, 658 So.2d 396 (Ala. 1995); andAlfa Mut. Ins. Co. v. Northington, 561 So.2d 1041
(Ala. 1990))).
[14] The applicable portion of § 11-47-5 states:
 "Contracts entered into by a municipality shall be in writing, signed and executed in the name of the city or town by the officers authorized to make the same and by the party contracting. In cases not otherwise directed by law or ordinance, such contracts shall be entered into and executed by the mayor in the name of the city or town and all obligations for the payment of money by the municipality, except for bonds and interest coupons, shall be attested by the clerk."
[15] The relevant portion of § 37-6-3(13) states:
 "A cooperative shall have the power:
 ". . . .
 "(13) To make any and all contracts necessary or convenient for the full purpose of the powers in this chapter granted . . . and in connection with any such contract to stipulate and agree to such covenants, terms and conditions as the board of trustees may deem appropriate. . . ."
[16] Baldwin also asserted that the Statute of Frauds required that any contract between Fairhope and Baldwin allocating electric-service territories be in writing. § 8-9-2, Ala. Code 1975. However, Baldwin does not ap pear to have asked for a jury instruction on this argument, nor does it appear that Baldwin argues that this is a basis on which the trial court erred.
[17] The pertinent portion of Rule 8(c) states:
 "In pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of frauds . . . and any other matter constituting an avoidance or affirmative defense."
[18] There are exceptions to this general rule. SeeBechtel v. Crown Cent. Petroleum Corp., 451 So.2d 793, 796
(Ala. 1984) ("`If an affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged, or unless an amendment to set forth the affirmative defense is properly made.'" (quoting 2A J. Moore, Federal Practice § 8,27[3] at 8-251 (2d ed. 1948))). There is no indication, and Baldwin does not argue, that either of these exceptions is applicable in this case. Baldwin has not introduced evidence showing that the law required the agreement to be in writing and signed by the mayor or that Baldwin's board of trustees was required, by law, to approve all Baldwin's contracts. Although it may be true that both the mayor of Fairhope and the general manager of Baldwin testified as to how contracts were customarily entered into by Fairhope and Baldwin, respectively, there does not appear to be testimony or other evidence as to what the law required of either party. Nor does it appear that Baldwin's eventual answer to Fairhope's counterclaims was properly made. See Rule 15, Ala. R. Civ. P., and Rule 12(b), Ala. R. Civ. P.
[19] Additionally, the trial court's instruction that "there is no rule of law that all contracts must be in writing" does not appear to be an error. See Jenelle Mims Marsh and Charles W. Gamble, Alabama Law of Damages § 17 11 n. 1 (5th ed. 2004) ("The party suing on an oral contract may have the jury charged that `there is no rule of law that all contracts be in writing and oral contracts are valid and enforceable just as written contracts when all elements of a contract exist.'" (quoting Alabama Pattern Jury Instructions-Civil No. 10.09 (2d ed.))).